Roosevelt HAYES *v.* STATE of Arkansas

CR 77-160                                    598 S.W. 2d 91

Supreme Court of Arkansas
Opinion delivered May 12, 1980

*Robert A. Newcomb*, for appellant.

*Steve Clark,* Atty. Gen., by: *Jack W. Dickerson,* Asst. Atty. Gen., for appellee.

JOHN I. PURTLE, Justice. On January 31, 1977, the jury convicted appellant and a co-defendant of murder in the first degree. Appellant was sentenced to life imprisonment. Both defendants were represented by the same public defender.

On appeal it is insisted that the trial court erred (1) in giving an erroneous instruction; (2) in admitting appellant's confession into evidence; (3) in admitting the co-defendant's cross-implicating confession into evidence; and, (4) in requiring the same attorney to defend both defendants.

We hold that none of the alleged errors were prejudicial and affirm the trial court.

Loretta "Rabbit" McGowan lived in the same dwelling with Beverly Lewis and Roosevelt Hayes for a period of time until she was murdered on October 12, 1976. The police learned of the murder shortly after it was committed, and the early stages of their investigation took them to appellant's house in order for the police to find some beginning point. They knew the deceased had been living with appellant and Beverly Lewis at 1605 Arch Street in Little Rock, Arkansas. They approached appellant at this address in an attempt to learn when and where he had last seen the murdered girl.

Hayes voluntarily accompanied the officers to the Little Rock Police Department where they talked to him about the activities of the deceased acquaintance during the day of her murder. After appellant gave conflicting stories about when and where he had last seen the victim, the police decided he was a possible suspect; and, he was given the standard Miranda warnings at that time. Subsequently, he gave a written confession which stated that details of the murder and the events leading up to it.

The statement included a description of how he beat "Rabbit" with a chain before he, Beverly, and a third party drove her to an isolated road near the Little Rock airport where she was killed. The appellant stated in the confession

that he handed the gun to Beverly Lewis who fired the first shot, and then he took the gun and fired three more shots at the victim's head.

Officers Reed and Keel first talked to appellant at his residence and then drove him to the police station for the purpose of obtaining a witness statement. Detective Chapman apparently took charge when they arrived at the station. Lieutenant Moore also took some part in the investigation or interrogation. Moore's part in the questioning apparently was limited to two statements: "You might as well tell us the truth because we are going to find out," and "What the son-of-a-bitch got, she deserved." Moore was not present at the Denno hearing.

Officers Chapman and Reed conducted the primary questioning and wrote the confession which was subsequently signed by the appellant. Apparently, Chapman became suspicious when appellant told several stories about when he had last seen the deceased. At this time the Miranda warning was given to appellant, and he was asked to take a trace metal test. The test was positive, and the confession followed shortly thereafter at 11:00 p.m.

Appellant had been at police headquarters about 20 minutes before he was given his Miranda warnings. The officers insisted that up until that time he was not a suspect in the case.

At the trial the appellant admitted signing the confession that was introduced into evidence. The officers testified they informed the appellant he had the right to have a lawyer at that time, and it was undisputed that he did not request a lawyer that night. Appellant states he did not request an attorney that night because he was told by one of the officers that it would be morning before he could see one.

Both appellant and the co-defendant took the stand in their own behalf at the joint trial, and both of their cross-implicating statements were read into evidence over the objection of their attorney.

At no time did the court suggest separate counsel for the two defendants nor did the appointed counsel request a severance or separate representation.

The first argument presented by appellant for reversal was the court erred in giving an erroneous instruction. At the close of the evidence, the court gave an instruction which included the following words:

> One is presumed to intend the natural and probable consequences of his action.

Defense counsel made a general objection to this instruction. The specific objection appears for the first time on appeal and is therefore not timely made. It is true the words were technically incorrect as they related to the intent of the appellant. However, the appellant's "intent" was not seriously disputed or contested during the trial. All of the evidence clearly reveals appellant fully intended to do what he did. Appellant's own confession shows his intent to murder the victim or to have his girlfriend do so. It makes no difference that Beverly Lewis fired the fatal shot as appellant planned it or that appellant handed the pistol to her and told her to shoot. In *Wilson* & Dancy v. *State,* 261 Ark. 820, 552 S.W. 2d 223 (1977), we held that failure to make a specific objection would be forgiven only if the resulting prejudice was so great that no objection or admonition to the jury could have undone the damage or erased the effect of the error. We do not feel the error here was so prejudicial as to require us to overlook the failure to make a specific objection.

For his second point of reversal, appellant argues his confession was erroneously admitted because Lieutenant Moore was not present at the Denno hearing. The only part played by Moore in the confession, according to appellant, were the statements: "You might as well tell us the truth because we are going to find out," and "What the son-of-a-bitch got, she deserved." We agree that the state is required to produce all material witnesses at the Denno hearing. In this instance we do not believe that Lieutenant Moore was a material witness because of his limited participation and the lack of any allegations that he could have contributed to

anything toward resolution of the question.

Appellant alleged he was afraid he would be shot it he tried to leave the police station. However, he admits no one told him this and further states he was not mistreated. In fact, he was given a cup of coffee in an effort to try to calm him before giving the confession.

In viewing the Denno hearing in the totality of the circumstances, we think the confession was properly admitted. *Degler* v. *State*, 257 Ark. 388, 517 S.W. 2d 515 (1974). In fact, the appellant admitted he had given the statement and had it read to him before he signed it. His only change at the Denno hearing was that part of what he had told them was a lie. Considering the overall facts surrounding the confession, it was not improper for the court to admit this confession.

Appellant further argues the confession should not have been admitted because he was not given his Miranda warnings prior to his statement being taken. The officers testified that the Miranda warning was given at the time they became suspicious of the appellant and that it was proper in all respects. The warning included a statement that the appellant had a right to an attorney prior to continuing with the statement. Although appellant stated at the trial that he was told it would be morning before he could see a lawyer, the written statement contradicts this. The appellant was entitled to be informed that he could have a lawyer prior to interrogation and that he could stop the interrogation at any time he wanted to. *Moore* v. *State*, 251 Ark. 436, 472 S.W. 2d 940 (1971). The rights form was read and explained to appellant, and it was introduced into evidence. It reads as follows:

I have been advised that I am suspect in a MURDER. That I have the right to use the telephone, that I have the right to remain silent, that I have the right to talk with an attorney, either retained by me or appointed by the court, before giving a statement, and to have my attorney present when answering any questions. I have also been advised if I waive these rights I have the right to stop the interrogation at any time. Also, that any

statement I give will be used in a court of law against me. I have read the above statement of my rights and I understand them. No promises or threats have been made to induce me into making a statement.

The above statement meets the requirements of Miranda as well as our own requirements in *Moore.*

For his third point of reversal, appellant argues it was error to admit the interlocking, cross-implicating confession of the co-defendant. He relies upon *Bruton* v. *United States,* 391 U.S. 123 (1968), as authority for preventing introduction of the co-defendant's statement. However, in *Bruton* the co-defendant did not take the stand as the co-defendant did in the present case. The primary holding in *Bruton* was that the co-defendant did not take the stand and thereby deprived the defendant of his right of cross-examination of the adverse witness. This is not true in the present case.

We agree with appellee that *Parker* v. *Randolph,* 442 U.S. 62 (1979), is controlling. *Parker* holds that when a defendant's own confession is admitted into evidence it renders the co-defendant's confesssion much less damaging. It also removes the primary objection of the ability to confront the witness, which was the thrust of the *Bruton* case.

In the present case the co-defendant was subjected to cross-examination thereby rendering *Bruton,* supra, inappropriate and *Parker* supra, appropriate as authority for admitting the co-defendant's implicating statement. We are not unmindful that in *Parker,* supra, some of the defendants were permitted to utilize the *Bruton* rule. Even though the case was reversed as to Parker, it was affirmed as to Pickens, another co-defendant. In *Parker,* supra, the court stated:

The issure before us in this case is whether *Bruton* requires reversal of a defendant's conviction when the defendant himself has confessed and his confession "interlocks" with and supports the confession of a co-defendant. We hold that it does not.

Therefore, it was not error to admit the statement of the co-defendant.

The final argument made by appellant is that he was denied his Sixth and Fourteenth Amendment rights to effective assistance of counsel. We recited in the factual portion of this opinion that neither the trial court nor the defense counsel suggested a severance of the trial or the appointment of separate counsel for the two co-defendants. Therefore, this matter is brought for the first time on appeal.

Appellant relies primarily on *Holloway* v. *Arkansas*, 435 U.S. 475 (1978). It is interesting to note that the same defense attorney was involved in the present case and the *Holloway* case. In *Holloway* the defense counsel made numerous and stringent objections to being required to represent multiple defendants. He argued it was a conflict of interest between the defendants, but the court refused to appoint separate counsel.

We agree that ordinarily a court should inquire as to whether or not there is possible conflict of interest when an attorney is appointed to represent more than one defendant. The best policy is to appoint separate defense counsel; unless it can be clearly determined before the trial starts that there will be no conflict of interest.

In *Holloway*, supra, the Supreme Court of the United States relied on *Glasser* v. *United States*, 315 U.S. 60 (1942), when it required separate appointment of counsel in order that the defense be untrammeled and unimpaired through the efforts of one counsel to defend multiple defendants. Joint representation frequently results in a conflict of interest; however, the court in *Glasser* stated that single representation of multiple defendants is not per se violative of constitutional guarantees of effective assistance of counsel. The Court expressly recognizes that in some cases multiple defendants can be appropriately represented by single counsel.

In the present case there is no instance of a conflict between the co-defendants. Each implicated the other, but there was no "shifting of the blame" from one to the other.

Keeping in mind that an accomplice is as guilty as the principal, we are unable to find any evidence of any conflict of interest in the facts of this case. In addition to the alleged error being without foundation, we are free to reject it on the theory of it being raised for the first time on appeal.

Affirmed.