Ardie **PROFIT** *v.* **STATE** of Arkansas

CA CR 82-41                                    637 S.W.2d 620

Court of Appeals of Arkansas
Opinion delivered September 1, 1982

*William R. Simpson, Jr.*, Public Defender, by: *Carolyn P. Baker*, Deputy Public Defender, for appellant.

*Steve Clark*, Atty. Gen., by: *Arnold M. Jochums*, Asst. Atty. Gen., for appellee.

GEORGE K. CRACRAFT, Judge. Ardie Profit was charged with the crimes of burglary and theft of property. He waived a jury and was found guilty of those charges by the trial court. He was given an enhanced sentence of ten years on each charge under the Habitual Criminal Act, the sentences to run concurrently. He contends that the trial court erred in finding that his pre-trial statement had been voluntarily given and that the evidence was not sufficient to sustain his conviction of the charge of burglary and theft of property. We do not agree.

On October 29, 1980 the home of Bradie Lee Anderson was burglarized. A number of items of personal property were taken. Mrs. Anderson gave the police a list describing the stolen articles. Among the items listed were four pillow cases; two were white, one was white with blue stripes, and the other red with white stripes.

Carrie Shannon who lived more than a block from the burglarized house testified that on the morning of the burglary she saw the appellant carrying four pillow cases which he placed in the car parked near her house. She had observed him coming from an alley. She described two of the pillow cases as being white and the others blue and white and red and white striped. She did not know what was in the pillow cases but each contained something "besides a pillow, he had plenty."

In a written, signed pre-trial statement received into evidence over the objection of the appellant, he stated that he had not actively participated in the burglary. He averred that while en route to a girlfriend's house near Mrs. Shannon's home he was asked by two friends to "stand watch at the

corner while they broke into a house." He did so for about ten minutes after one of his friends entered the house. He stated that sometime later one of those who had burglarized the home brought him a blue and white pillow case. He was asked to take the pillow case into the house in secrecy so that his friend's mother would not know about it. He stated that he took the pillow case into the house as requested. He further stated that the pillow case contained items of property which exactly matched the description of the list given the police by Ms. Anderson at the time of the burglary. In that statement he further admitted assisting his friends in the transportation and attempts at sale of the stolen articles.

At his trial the appellant testified in his own behalf. No other defense witnesses were called. In his testimony, while admitting that he had read and made corrections in his written statement before it was signed, he denied all knowledge that his friends were burglarizing the house, stated that the pillow cases which he placed in the car were brown and contained his girlfriend's laundry, denied his statement of prior possession of, or assistance in the sale of, the stolen goods, and stated that his statement was wrong in those respects. He testified that his two friends did in fact ask him to stand watch, but he did not know what they were doing or why they wanted him to watch and said that he would, only to "avoid any further conversation with them."

On appeal this court views the evidence in the light most favorable to the appellee and affirms if there is any substantial evidence to support the conviction. *Fountain* v. *State,* 273 Ark. 457, 620 S.W.2d 936 (1981); *White* v. *State,* 271 Ark. 692, 610 S.W.2d 266 (Ark. App. 1981).

The testimony of Ms. Anderson clearly establishes a burglary and theft of property. She also testified that the day before the burglary appellant had come to her home inquiring as to the whereabouts of a person who had never lived there. He was thus placed at the scene of the crime the day before it occurred. Ms. Shannon gave eye-witness testimony that the defendant placed pillow cases matching descriptions of those stolen in a motor vehicle near her house and that the pillow cases contained articles other than those

intended for their use. In his pre-trial written statement the appellant admitted being at the scene of the burglary and that he had participated in it to the extent of serving as lookout. He admitted having the recently stolen articles in his possession that same day and of his participation in the attempted sale of the items. In his testimony at the trial while denying knowledge of what was taking place, he admitted to having been at the scene of the crime at the time it was being committed.

Unless we agreed with the appellant that his pre-trial statement should have been suppressed we could not say that the finding of the trial court was not supported by substantial evidence. We do not agree.

The appellant made no pre-trial motion to suppress his statement. His first objection came at the time it was offered in evidence at the trial. The burden is on the State to demonstrate that an in-custody statement was freely and voluntarily given, and on appeal we make an independent determination of voluntariness based on the totality of the circumstances and will not set aside a trial court's finding of voluntariness unless it is clearly against a preponderance of the evidence or clearly erroneous. *Beard* v. *State,* 269 Ark. 16, 598 S.W.2d 72 (1980). From our review of the testimony and of all of the circumstances surrounding the appellant's pre-trial statement we cannot say that the trial court's finding of voluntariness was not supported by a preponderance of the evidence or was clearly erroneous.

The appellant testified that he was arrested on February 26 and was then fully informed of all of his *Miranda* rights. He told the officers that he knew nothing of the burglary and the only statement that he could make was that he was in no way involved. Shortly thereafter he did orally give information as to the location of the stolen items. This information proved incorrect. He stated that on the morning of March 1st he was again brought to the interrogation room and questioned. He testified that he then requested and received permission to call Cliff Jackson, a Little Rock attorney. He stated that he informed the officers of the name of his attorney and pursuant to his advice requested that the

questioning be terminated and that he be returned to his cell. He stated that despite this request on the advice of his attorney the questioning continued. The attorney did not testify at the trial. It may be noted however that he did testify at a hearing on a motion for a new trial which is hereinafter discussed. While he did state that he did have such a telephone conversation in which he so advised the appellant, his testimony would establish that his call was made on the afternoon of March 1st at a time when the statement had already been made and signed. Appellant further testified that he made the written statement on March 1st only after Officer Fulks, who was present during part of the interrogation, promised him that if he would give information about other burglaries the charge against him would be "non processed."

Officers Alexander and Sylvester who were present during the February 26th interrogation testified that at no time did he request that the questioning be terminated and that he merely indicated that he did not wish to make a written statement at that time. Both officers testified that at no time did he ever request an attorney, although he had been fully advised of his rights. Officer Alexander testified that on the morning of March 1st he again interrogated appellant in response to appellant's request that he come to the interrogation room for that purpose. Officers Alexander and Shadrick, who were present during the interrogation on March 1st, testified that at no time during that interrogation did appellant request an attorney, mention that Mr. Jackson was his attorney or request that the questioning be terminated. They both testified that the statement was given freely and voluntarily and without inducement.

The appellant argues that as Officer Fulks was in the room for "a while" and Officer Alexander admitted leaving the room for a short period of time, it was possible that the remarks were made in his absence. This argument would be more persuasive if the record did not show that Officer Shadrick was in the room at all times during interrogation and denied that any inducements were made by any person. The appellant contends that as Sergeant Fulks was a material witness to the making of the confession that it was

the duty of the State to produce him at the trial or explain his absence relying upon *Hays* v. *State,* 269 Ark. 47, 598 S.W.2d 91 (1980) and *Smith* v. *State,* 254 Ark. 538, 494 S.W.2d 489 (1973). We do not think that these decisions are applicable here. The oral motion made by counsel made no reference to inducements made by any person but objected solely upon the failure to terminate the questioning after the attorney's advice had been made known. Appellant was not questioned about such a remark by his own counsel. His reference to it came voluntarily at the end of his testimony in response to questions of the court to make certain that he had truthfully answered that he understood his rights in the making of his statement. No written motion to suppress the confession was filed within ten days of trial date as required by Rule 16.2, Arkansas Rules of Criminal Procedure, as amended by per curiam order dated June 1, 1981, now found in 273 Ark. 550, 616 S.W.2d 493. The State was not apprised of the alleged inducement relied upon for suppression prior to the time the document was offered into evidence. Appellant argues that as the court in which the case was tried does not conduct omnibus hearings, he had no occasion to raise it prior to that time. That the court does not conduct such hearings or dispose of motions at pre-trial hearing does not excuse compliance with the requirement of timely filing of a motion to suppress.

Although not required to do so the trial court permitted the untimely motion and determined the issue of voluntariness. Under these circumstances the failure to make timely objection in no way weakened the State's burden of proving voluntariness. The failure to disclose the objection in a timely motion, however, can affect the State's obligation to produce all material witnesses to the confession at the hearing.

We conclude from all of the circumstances surrounding the incident that absent a denial of a specific request that Officer Fulks be produced, the denial of the other officer present that such a statement was made, if believed, sufficiently rebutted the self-serving statement made by the appellant.

The testimony of the police officers tended to show that all of appellant's rights were preserved and that his statement was given voluntarily. Where evidence is in conflict it is for the trial court to determine the weight and credibility to be given the testimony. The defendant's testimony regarding his interrogation is not entitled to more weight than that of the officers'. *Smith* v. *State*, 256 Ark. 67, 505 S.W.2d 504 (1974); *Decker* v. *State*, 255 Ark. 138, 499 S.W.2d 612 (1973).

The appellant finally contends that the trial court erred in refusing to grant a new trial based on newly discovered evidence. At the conclusion of the trial the court resolved the credibility questions against the appellant and specifically found that he was unbelievable. Among other noted inconsistencies in his statement the trial court expressed doubt that Mr. Cliff Jackson would be found in his office on Sunday morning. The appellant desired a new trial in order to introduce the testimony of Mr. Jackson that such a telephone call had been made to him. In denying the motion for new trial the trial court specifically found that the testimony of Mr. Jackson was not new evidence because it was merely corroborative and could have been presented at the trial. His connection with the appellant was known at all times and constantly referred to during the trial. It was in no sense newly discovered. We find no error.

We affirm.