LEWIS *v.* STATE.

4685                                           247 S. W. 2d 195

Opinion delivered March 24, 1952.

G. C. Carter and Mark E. Woolsey, for appellant.

Ike Murry, Attorney General, and Dowell Anders, Assistant Attorney General, for appellee.

HOLT, J.   An information based on § 41-3929, Ark. Stats., 1947, charged appellant, Orlen Jasper Lewis, with the crime of larceny by bailee, in that said appellant "did unlawfully and wilfully and feloniously and knowingly receive, conceal, convert, keep and use the sum of $19,760.76 in gold, silver or paper money contrary to the provisions of the agreement and conditions under which the same was obtained, the said sum of money being then and there the property of L. E. Lewis, S. H. Sparkman, Irwin Anderson and Lester James, and the said Orlen Jasper Lewis came into possession of the said sum of money as bailee."

The trial court (a jury having been waived) convicted appellant and fixed his punishment at a term of three years in the State penitentiary. From the judgment is this appeal.

For reversal, appellant stoutly contends that he was guilty of no offense under the above statute, that it "has no application whatever to the facts in the case at bar, whether as alleged in the Information and Bill of Particulars, or as developed in evidence; and this for the obvious reason that under these facts there was neither a bailee nor an embezzlement or larceny." We hold that appellant is correct in his contention.

Section 41-3929 provides: "Any person who shall lawfully obtain possession as bailee of any money, goods, vehicle, aircraft, chose-in-action, or property of any character or description, whether or not such possession was

obtained gratuitously or for a consideration, and who shall thereafter knowingly receive, conceal, convert, keep, or use said property as above described contrary to the provisions of the agreement or conditions under which the same shall have been obtained, shall be deemed guilty of larceny to the degree depending upon the value of the property involved as fixed by law, and upon conviction thereof shall be punished as in cases of larceny."

There appears to be little, if any, dispute as to the material facts, which are to the following effect: "April 1, 1949, appellant, Lewis, entered into a contract in the amount of $198,000 with the United States to clear the reservoir for Hulah Dam in Oklahoma. Shortly thereafter, he began work under the contract and employed certain subcontractors and laborers. The subcontractors were L. E. Lewis, S. H. Sparkman, Irwin Anderson and Ed Foster and the laborers were Ernest Crooks, Lester James, Johnny Mason and C. T. Ruston, all of whom performed their work until July, 1949, when they complained to appellant that they had not been paid. Under the terms of appellant's contract with the Government, he was to receive under certain conditions payments as the work progressed to cover the amount of work completed. In addition to this contract, appellant was required to enter into a payroll bond in the amount of $99,000 for the payment of labor and materials and a performance bond in the same amount guaranteeing performance of the contract.

These subcontractors and laborers told appellant they understood there was a check for $20,000 due him on the contract in the Tulsa office of the Government Engineers and offered to go with him to Tulsa to obtain the check in order that they might be paid. Appellant refused to go at that time but agreed to go the next day and get the check and return and pay them from its proceeds. He went alone and did get the check, cashed it on the 9th of July at an Ozark, Arkansas, bank and left Ozark and disappeared without paying his subcontractors and employees what he owed them, as promised. He was not seen or heard from again until August, 1951, when

he was located in California. He never returned to carry out the above contract with the Government and has never paid his subcontractors and laborers for their work.

We are unable to find anything in appellant's contract with the Government, either expressed or implied, or in the evidence presented, that would make him a bailee (or trustee), within the terms of the above § 41-3929, for his subcontractors and laborers employed. Appellant's contract was with the Government alone. He had a right to receive and cash the check in question. It was his money and under his contract with the Government it could not have paid it to anyone else without appellant's consent. The fact that appellant may have promised to pay his subcontractors and laborers what was due them after he cashed the check in question and failed to keep said promise did not make him a bailee or trustee for them, under the above statute, however reprehensible his conduct might have been in refusing to pay an honest obligation.

This court in *Tally* v. *State,* 105 Ark. 28, 150 S. W. 110, construing the term "bailee" as used in the above statute, said: "The term 'bailee,' when used in statutes declaring what acts of embezzlement shall constitute a public offense, is not to be understood, says Mr. Wharton, 'in its large, but in its limited sense, as including simply those bailees who are authorized to keep, to transfer, or to deliver, and who receive the goods first *bona fide,* and then fraudulently convert.' When it does not appear that any fiduciary duty is imposed on the defendant to restore the specific goods of which the alleged bailment is composed, a bailment under the statute is not constituted, though it is otherwise when a specific thing, whether money, securities, or goods, is received in trust and then appropriated."

We have consistently followed the universal rule that "criminal statutes are to be strictly construed, and no case is to be brought by construction within a statute unless it is completely within its words. . . . 'There

is no better settled rule in criminal jurisprudence than that criminal statutes must be strictly construed and pursued. The courts cannot, and should not, by construction or intendment, create offenses under statutes which are not in express terms created by the Legislature.' " *Giles* v. *State,* 190 Ark. 218, 78 S. W. 2d 70.

"It would violate the accepted canons of interpretation to declare an act to come within the criminal laws of the State merely by implication." *State* v. *Simmons,* 117 Ark. 159, 174 S. W. 238.

It follows from what we have said, the judgment must be and is reversed and the cause is dismissed.