Bobby RUST *v.* STATE of Arkansas

CR 77-104                                               565 S.W. 2d 19

Opinion delivered May 1, 1978
(In Banc)

*Jeff Duty,* for appellant.

*Bill Clinton,* Atty. Gen., by: *Joseph H. Purvis,* Asst. Atty. Gen., for appellee.

GEORGE ROSE SMITH, Justice. On September 30, 1976, the appellant, after having unsuccessfully attempted to cash a bad check at a food store, made his escape by threatening a clerk with a gun. Charged with aggravated assault and with the use of a firearm, Rust pleaded guilty to both charges and was sentenced to 3 years' imprisonment for the aggravated assault and to 5 years' imprisonment for the use of a firearm,

the sentences to run consecutively. For reversal he contends that the enhanced punishment for the use of a firearm should not be applicable, because the use of the firearm was an essential element of the aggravated assault.

The problem is that of determining what the legislature meant by referring to "an element" of the offense in subsection (2) of the firearm statute. Ark. Stat. Ann. § 41-1004 (Repl. 1977). The firearm statute has two subsections and reads as follows:

> (1) If a defendant is convicted of a felony and the trier of fact finds that the person so convicted employed a firearm in the course of or in furtherance of the felony, or in immediate flight therefrom, the maximum permissible sentence otherwise authorized by section 901 or section 1001 shall be extended by fifteen (15) years.
> (2) Subsection (1) shall not apply to a defendant convicted of a felony, an element of which is:
> (a) employing or using, or threatening or attempting to employ or use, a deadly weapon; or
> (b) being armed with a deadly weapon; or
> (c) possessing a deadly weapon; or
> (d) furnishing a deadly weapon; or
> (e) carrying a deadly weapon.

The appended Commentary, which was before the General Assembly when the statute was adopted, explains the legislative intent in the enactment of subsection (2):

> Subsection (2) is necessitated by the fact that a number of Code offenses are graded more severely when a deadly weapon is involved. It is obviously unfair to convict a person of a more serious felony because he has used a deadly weapon and then further increase the penalty for the felony because the deadly weapon was a firearm.

In this connection it should also be noted that in another section of the Code a "deadly weapon" is first defined as a firearm. § 41-115 (4).

As the Commentary explains, subsection (2) of the firearm statute is meant to apply when the Code grades an offense more severely because a deadly weapon is used. The difference between robbery and aggravated robbery illustrates the legislative purpose. Simple robbery is defined as the employment or threatened employment of physical force upon another person with the purpose of committing a theft. It is a class B felony. § 41-2103. Aggravated robbery is defined as robbery committed by one who is armed with a deadly weapon or who inflicts or attempts to inflict death or serious physical injury. It is a class A felony. § 41-2102. Hence one who commits robbery with a firearm necessarily commits aggravated robbery; so enhanced punishment under the firearm statute is deemed unfair.

In the case at bar the offense is aggravated assault. By comparing the statutory definition of aggravated assault with that of assault in the first degree (the next lower grade), it will be seen that the aggravation has nothing to do with the use of a deadly weapon. In fact, a deadly weapon is not even mentioned in the statutory definition of either offense.

§ 41-1604. Aggravated assault. — (1) A person commits aggravated assault if, under circumstances manifesting extreme indifference to the value of human life, he purposely engages in conduct that creates a substantial danger of death or serious physical injury to another person.

(2) Aggravated assault is a class D felony.

§ 41-1605. Assault in the first degree. — (1) A person commits assault in the first degree if he recklessly engages in conduct which creates a substantial risk of death or serious physical injury to another person.

(2) Assault in the first degree is a class A misdemeanor.

Thus the principal difference between the two offenses is that one who commits an aggravated assault must act purposely, but one who commits an assault in the first degree need only act recklessly. That distinction, between purposeful conduct and reckless conduct, is explained in section 41-203 of the Code.

We conclude that the reference in subsection (2) of the firearm statute, to the use of a deadly weapon as "an element" of the offense, means an element as set forth in the statutory definition of the particular offense. Otherwise the firearm statute would be practically a nullity, because it could always be argued — as it is argued here — that the use of the firearm was actually an element of the offense merely because one was used in its commission. The test, however, as we have seen, is whether the statutory definition of the offense refers to a deadly weapon. There is no such reference in the definition of aggravated assault; so the firearm statute is applicable.

Affirmed.

BYRD and HICKMAN, JJ., dissent.

DARRELL HICKMAN, Justice, dissenting. The majority has overlooked, as it must, the definition of a deadly weapon. In doing so it has concluded that the use of a deadly weapon is not an element of aggravated assault.

Apparently the legislature wanted to penalize more severely a person using a firearm to commit a crime than one who did not use a gun or firearm. This is, of course, a valid subject for legislation. However, the legislature did not stop at defining a deadly weapon as a gun but defined a deadly weapon as literally anything capable of causing serious physical injury. Ark. Stat. Ann. § 41-115(4)(b) (Repl. 1977). Applying this definition of a deadly weapon to criminal acts would mean that a person convicted of killing another person using his hands could be sentenced to an additional fifteen years in the penitentiary for using a deadly weapon. Surely this was not the intent of the legislature.

It becomes a matter of semantics, then, as to whether anything which is capable of causing serious physical injury. is an element of aggravated assault. Certainly there is room for doubt.

The majority, rather than using the normal rules of construction of criminal statutes, has in fact become an advocate

of the new criminal code and overlooks any imperfections in the code instead of strictly construing its language. Criminal statutes are strictly construed and any doubts are resolved in favor of the defendant. *Rowland* v. *State*, 255 Ark. 215, 499 S.W. 2d 623 (1973).

If this were not the third time that the majority has gone out of its way to liberally interpret the code in questionable situations, I might not strongly object. See *Britt* v. *State*, 261 Ark. 488, 549 S.W. 2d 84 (1977); *Martin* v. *State*, 261 Ark. 80, 547 S.W. 2d 81 (1977). However, it has become clear to me that the majority has no intentions of objectively interpreting the new criminal code and applying the usual standards of judicial review to criminal statutes.

Therefore, I respectfully dissent from the majority. I would reverse the case and remand it for trial and sentencing without the application of Ark. Stat. Ann. § 41-1004 (Repl. 1977).

I am authorized to state Justice Byrd joins me in this dissent.