Jimmy Dale JORDON *v.* STATE of Arkansas

CR 81-27                                      626 S.W. 2d 947

Supreme Court of Arkansas
Opinion delivered January 18, 1982

*Gordon L. Cummings,* for appellant.

*Steve Clark,* Atty. Gen., by: *William C. Mann, III,* Asst. Atty. Gen., for appellee.

STEELE HAYS, Justice. This appeal is brought from the

Washington Circuit Court for a burglary conviction. The appellant was found to have been previously convicted of four or more felonies subjecting him to an extended term of punishment pursuant to Ark. Stat. Ann. § 41-1001 (Repl. 1977). In addition, he was sentenced pursuant to Ark. Stat. Ann. § 41-1004 because he was found to have "employed a firearm" in furtherance of the burglary. In his bifurcated trial, the jury recommended a twenty-year prison sentence.

Our jurisdiction is invoked under Supreme Court Rule 29 (1) (c), in that the validity, interpretation, construction, or constitutionality of an act of the General Assembly is involved.

On appeal it is insisted that (1) the trial judge erred in not disqualifying himself and (2) in allowing the defendant's confession into evidence; (3) § 41-1004 is unconstitutionally vague and (4) the evidence was insufficient to support a finding that appellant "employed a firearm" within the meaning of the statute. The fourth point alone has merit but does not require reversal as it is clear the sentence was not extended under § 41-1004.

At 1:00 a.m. on August 13, 1980, the Ozark Steel Company in Fayetteville was burglarized. Gasoline was siphoned from company vehicles and an unsuccessful attempt was made to open a safe.

Four burglars were interrupted by police and employees of Ozark Steel. In an ensuing chase, at least one shot was fired by the police. Two suspects were arrested on the premises and the appellant was arrested sometime later by Officer Joey Boersma in a nearby wooded area. Appellant appeared exhausted and had superficial cuts and scratches sustained, evidently, running through underbrush. At approximately 1:50 a.m. appellant was taken to the Fayetteville Police Station where he signed the standard Miranda rights form.

Appellant was questioned by Officer J. O. Surles. After refusing to implicate others, appellant was allowed to go to the telephone room to make a call. Having just learned that

one of the suspects might be armed, Officer Surles spoke, so he says, from across the room to say, "Jimmy, there's an empty holster. Before anyone gets killed, do any of the other guys have a gun?" Shortly thereafter appellant confessed to the burglary, giving the details and the names of the other participants.

## I.

Appellant argues the trial judge should have disqualified himself because he had actively prosecuted him in three of the four prior felony convictions relied on for the enhancement of punishment.

Although this precise question has not been addressed by this court, other jurisdictions have rejected the argument by holding a trial judge is not disqualified from hearing a criminal prosecution because he had been a prosecutor in a prior conviction used to enhance the punishment for a current offense. *Nichols* v. *State*, Tex. Cr. App., 494 S.W. 2d 830 (1974); *Morgan* v. *State*, Tex. Cr. App., 503 S.W. 2d 770 (1974); *Hawthorne* v. *State*, Tex. Cr. App., 459 S.W. 2d 826 (1970). This argument has also been rejected where earlier convictions are applied under an habitual criminal statute. *Maloney* v. *Maxwell*, 174 Ohio 84, 186 N.E. 2d 728 (1962).

Appellant also argues that bias is shown by the judge's out-of-court statement, made two days after his fourth felony conviction, which was suspended. Judge Gibson is said to have told appellant he would send him to the penitentiary if he came before his court again. But admonitions of this sort are not unusual following a suspended sentence and are generally prompted by nothing more than to impress upon the defendant the need to stay out of trouble. Without some added element, they are not to be regarded as evidence of a residual bias.

Appellant cites *Burrows* v. *Forrest City*, 260 Ark. 712, 543 S.W. 2d 488 (1976), to support his argument. In *Burrows*, the trial judge's comment that a defendant should bring his toothbrush to a hearing to revoke a suspended sentence, along with other statements indicating bias or prejudice

against the appellant, was sufficient to require disqualification. *Burrows* is distinguishable in that the statement there was made just before the hearing. Here, the statement was made when no criminal proceedings were pending against appellant. The comment can be reasonably construed as merely a warning and not an indication of lasting bias by the trial judge that would affect any proceeding that might happen in the future.

Appellant cites Article 7, § 20, of the Arkansas Constitution:

Disqualification of judges — Grounds. No judge or justice shall preside in the trial of any cause in the event of which he may be interested, or where either of the parties shall be connected with him by consanguinity or affinity, within such degree as may be prescribed by law; or in which he may have been of counsel or have presided in any inferior court.

There is no evidence of a violation of this section, as the interest referred to is a pecuniary or a proprietary interest, *Mears v. Hall,* 263 Ark. 827, 569 S.W. 2d 91 (1978); *Forman v. Marianna,* 43 Ark. 324 (1884), and the reference to having been "of counsel" obviously relates to the case being tried. *Bledsoe v. State,* 130 Ark. 122, 197 S.W. 17 (1917).

The fundamental issue we must consider here is whether under the circumstances the judge's impartiality might "reasonably be questioned." (See Code of Judicial Conduct, Canon 3, subdivision C.) The appellant was heard on the allegation of bias. The record shows the trial was conducted in an impartial manner and there is no indication that any of the judge's rulings were the result of bias. The jury sat in both stages of the bifurcated trial and the judge only followed its verdict and recommendation in sentencing. We find no objective intimation of bias or prejudice and even the appearance of bias, which appellant insists is present, we regard as subjective.

## II.

Appellant contends that his confession was coerced and should have been suppressed by the trial judge. He argues that he was exhausted, bloody from the cuts and scratches, thirsty and in need of medical attention. He points out that Officer Boersma arrested him at gun point, made him lie on his stomach to handcuff him and that his head may have been struck as he got into the police car. He insists that Officer Surles' remark should be interpreted as a threat on his life. The officer denies that his words had any reference to appellant, but merely to the other officers and suspects.

But whether these circumstances are taken severally or collectively they fail to suffice. Appellant's rights were read to him when he entered the police station and there is no evidence that he was unreasonably denied medical attention or water except for a momentary interval when he first arrived at the station. He argues that Officer Surles' remark was threatening but the trial court found that insufficient to suppress the confession and though we review the record independently we need not shun its findings. *Harvey* v. *State*, 272 Ark. 19, 611 S.W. 2d 762 (1981). We see no basis to reverse. We cannot say that the comment could not have been taken as appellant claims, but the more plausible interpretation is consistent with the officer's explanation. Had the appellant been denied needed attention, subjected to prolonged questioning or intimidating circumstances, his arguments would be more convincing, but those elements are not present.

Appellant also argues that Officer Boersma was a material witness and should have been produced by the State at the Denno hearing. Relying on *Hayes* v. *State*, 269 Ark. 47, 598 S.W. 2d 91 (1980), he points out that Boersma held a revolver on him 20 minutes before the questioning at the station. But there is no indication that this officer was involved in the events at the station and the State was not required to produce him.

## III.

Appellant argues Ark. Stat. Ann. § 41-1004 (Repl. 1977)

is unconstitutionally vague in that "employed" is not defined. The statute reads in part:

> Sentence to imprisonment for felony — Extended term for use of firearm. — (1) If a defendant is convicted of a felony and the trier of fact finds that the person so convicted *employed a firearm* in the course of or in furtherance of the felony, or in immediate flight therefrom, the maximum permissible sentence otherwise authorized by section 901 [§ 41-901] or section 1001 [§ 41-1001] shall be extended by fifteen (15) years. (Emphasis added.)

In *Barnes* v. *State,* 258 Ark. 565, 528 S.W. 2d 370 (1975), we held a similar statute not to be unconstitutionally vague. Webster defines "employ" as "1. To make use of, as an instrument, means or material; to apply, use; as to employ a pen in writing. . . . "

The Arkansas Model Jury Instructions, AMCI 6001, utilizes the word "use" rather than "employ" in its instruction for § 41-1004 where the defendant is also charged with being a habitual offender. The Arkansas cases construing § 41-1004 utilize the words "use" and "employ" interchangeably. *Welch* v. *State,* 269 Ark. 209, 599 S.W. 2d 717 (1980); *Rust* v. *State,* 263 Ark. 351, 565 S.W. 2d 19 (1978). We conclude the trial court was correct in ruling § 41-1004 was not unconstitutionally vague and that "employed" is a word of common usage and understanding, thus not requiring further definition. Where a man of average intelligence would not have to speculate as to the meaning of the statute, the constitutional requirement of specificity is met, since fair warning of the proscribed conduct is given. *Rowan* v. *Post Office Department,* 397 U.S. 728 (1970); *United States* v. *Harris,* 347 U.S. 612 (1954); *Newton* v. *State,* 271 Ark. 427, 609 S.W. 2d 328 (1981); *Neal* v. *State,* 259 Ark. 27, 531 S.W. 2d 17 (1975).

## IV.

Finally, we consider whether the evidence was sufficient to support the jury's finding that a firearm was employed by

appellant in the commission of the burglary or in flight. The testimony is conflicting as to whether the appellant or a co-defendant had possession of the revolver while siphoning the gasoline or while in the building attempting to break open the safe. There is no evidence in the record that the appellant made any use of the firearm for any purpose in the commission of the felony or in flight. Use of the verb "employed" rather than "in possession" compels us to conclude the Arkansas General Assembly intended something more than mere possession.

Since we have not ruled on the specific question we look elsewhere. California has two statutes relevant to this issue: West's Ann. Pen. Code § 12022, which enhances the punishment by one year if a person is *armed* during any felony and § 12022.5, which enhances the punishment by two years if a firearm is *used* in the commission of a felony.

In *People* v. *Chambers*, 102 Cal. Rptr. 776, 498 P. 2d 1024 (1972), § 12022.5 was interpreted to require more than mere possession:

> [5] We next direct our attention to that conduct which constitutes use of a firearm within the meaning of the statute.[5] By employing the term "uses" instead of "while armed" the Legislature requires something more than merely being armed. (*People* v. *Washington* (1971), 17 Cal. App. 3d 470, 474, 94 Cal. Rptr. 882.) One who is armed with a concealed weapon may have the potential to harm or threaten harm to the victim and those who might attempt to interrupt the commission of the crime or effect an arrest. (See *People* v. *Pheaster* (1963), 215 Cal. App. 2d 754, 30 Cal. Rptr. 363.) Although the use of a firearm connotes something more than a bare potential for use, there need not be conduct which produces a fear of harm or force by means or display of a firearm in aiding the commission of one of the specified felonies. "Use" means, among other things, "to carry out a purpose or action by means of," to "make instrumental to an end or process," and to "apply to advantage." (Webster's New Internat. Dict. (3d ed. 1961).) At 1027. (Footnote omitted.)

The question was also addressed in *In Re Culbreth*, 130 Cal. Rptr. 719, 551 P. 2d 23 (1976), at 26.

[3] It is clear that the terms "uses" was deliberately employed by the Legislature when it adopted section 12022.5. To "use" means, among other things, "to carry out a purpose or action by means of," to "make instrumental to an end or process," and to "apply to advantage." (*People* v. *Chambers, supra,* 7 Cal. 3d at p. 672, 102 Cal. Rptr. at p. 779, 498 P. 2d at p. 1027.)

Appellee relies on *United States* v. *Moore,* 580 F. 2d 360 (Ninth Circuit 1978) which construes 18 U.S.C.A. 924 (c) (1), the Federal counterpart to § 41-1004. Moore was found to have violated the statute by mere possession of a firearm in an attempted bank robbery. *Moore* is distinguishable in that 18 U.S.C.A. 924 (c) specifically prohibits either 1) the use of a firearm to commit a felony *or* 2) the *unlawful carrying* of a firearm during the commission of any felony.

Many states specifically provide for increased sentences for mere possession of firearms related to the commission of a felony, but Arkansas has no such law. We find no jurisdiction which imposes a mandatory 15 year extension of sentence to run consecutively for mere possession of a firearm in the commission of a felony. We conclude § 41-1004 applies only where a firearm is used by the defendant in furtherance of the commission of a criminal offense.

Although we find the evidence insufficient to support the finding that appellant violated § 41-1004, we find no reason to reverse as his sentence was not extended. Had it been, he would have received a sentence of 35 years rather than the 20 the jury recommended. The trial was bifurcated and appellant was found guilty of burglary and to have committed four or more previous felonies, thus 20 years is the minimum sentence he could have received under § 41-1001 (2) (b) irrespective of the issue of the firearm.

Affirmed.

HICKMAN, J., dissents.