HAMLIN FLYING SERVICE, INC. and James HESS
*v.* B. J. BRECKENRIDGE and Earl D. ANDERSON

81-199                                    628 S.W. 2d 312

Supreme Court of Arkansas
Opinion delivered February 22, 1982

*Wright, Lindsey & Jennings,* for appellants.

*Fletcher C. Lewis,* for appellees.

STEELE HAYS, Justice. The single issue presented by this appeal is a challenge to the sufficiency of the evidence in support of a jury verdict. Appellees Breckenridge and Anderson brought suit against appellants James Hess and his company, Hamlin Flying Service, Inc., alleging damage to plaintiffs' cotton as a result of hormone herbicides sprayed on a nearby rice field belonging to Davis Brothers, Incorporated (not a party to the suit). The jury awarded $29,000.00 in damages to Breckenridge and Anderson and for reversal Hess argues that the trial court should have granted defense motions for a directed verdict and for judgment n.o.v. because there was no substantial evidence the defendants caused the damage. We think the evidence was sufficient.

In 1979 Breckenridge and Anderson planted 160 acres of cotton in Woodruff County. The acreage was in eight parcels, relatively close together, just west of Bayou DeView and south of the Jackson County line except for one parcel just north of the line. The bayou runs north and south at that point and approximately three-quarters of a mile east of the bayou lies the Davis rice field, an 80-acre tract and the subject of this dispute. The rice field is one-half mile long, north to south, and one-quarter mile wide, east to west, Jackson County being its northern boundary. Near the northwest corner of the rice field, just inside Jackson County, is what is described as a "tall communication tower."

Stating the facts most favorably to the appellees, around 6 a.m. one morning in mid July, 1979, a yellow, single wing airplane was observed spraying an area just south of the

tower and east of the bayou. The wind was from the east. A strong odor of 2-4 D was present in appellees' cotton fields, which lay almost due west of the Davis rice field. The plane appeared to be working an east-west pattern and twice crossed over the bayou as it made its turns. Some five or six days afterward, on what appellees say was July 16, the cotton began to show initial signs of hormone herbicide poisoning characteristic of 2-4 D and 2-4-5 T. The residual damage to appellees' cotton was moderate to severe resulting in an appreciable loss. It is conceded by both sides that the effects of hormone herbicide poisoning require a five-to-six day incubation period. Several witnesses for appellees testified positively the spraying occurred on July 11 and the ill effects were visible by July 16.

Appellants admit they sprayed 2-4 D and 2-4-5 T on the Davis field, but they insist it was on July 16, and they stoutly deny any responsibility for appellees' damage because, they say, they did not spray the herbicides anywhere near the area in question on July 11 or at any time which could conceivably produce visible damage to cotton on July 16. Thus, the very crux of this dispute is not so much whether the appellants sprayed herbicides in the manner and location claimed by appellees, but whether they sprayed on July 11, as appellees claim. Appellants point out, correctly, that there is no direct evidence that the plane seen by the appellants' witness, David Pritchard, was theirs — Pritchard could only say that the plane was a yellow, single wing plane that resembled appellants' plane, a Rockwell Thrush. Pritchard testified to having seen the plane spraying east of the bayou and south of the tower at about 6 a.m. on the morning of July 11. He went immediately to appellees' cotton fields and detected a strong odor of 2-4 D. Shown a photograph of appellants' plane and asked if he had ever seen a plane like it before, he answered that he had, saying the plane looked like the one he saw.

Appellants concede that at about 6:30 on a July morning, which they say was the 16th, James Hess, flying the Thrush, sprayed 30 gallons of 2-4 D and 2-4-5 T on the rice field belonging to Davis Brothers. Hess insisted he worked north and south, that being the longer leg, rather

than east to west, always turning away from the bayou. He said that at no time did he cross the bayou or come closer than a half mile. To prove he kept a greater distance from the cotton fields, Hess and Walter Davis, who flagged for him, testified that only the east 40 acres of rice was sprayed (farthest from the bayou) there being "no indigo problem" in the west half.

The only issue on appeal is the sufficiency of proof and in gauging that we are required by a multitude of cases to view the evidence, with all reasonable inferences to be drawn from it, in the light most favorable to the appellees and we are bound to affirm if any substantial evidence exists. *Washington National Insurance Co. v. Meeks,* 252 Ark. 1178, 482 S.W. 2d 618 (1972). In order to reverse we must be able to say there is no reasonable probability that the incident could have occurred as found by the jury. *Fanning v. Hembree Oil Co.,* 245 Ark. 825, 434 S.W. 2d 822 (1968).

Appellants point to two weaknesses in appellees' evidence: (1) the absence of positive identification of the yellow plane and (2) the absence of direct evidence that the plane was spraying the Davis rice field. We agree the proof on the first point is weak, though we disagree it is fatal. Pritchard was unable to see the markings or registration numbers of the yellow plane and, hence, his testimony was inconclusive, in spite of what he perceived to be a resemblance between the plane he saw and the one in the photograph. If that were the sum and substance of the evidence connecting the appellants to the spraying we would be hard pressed to say the verdict was supported by substantial evidence. But that is not the entire proof, and when all the circumstantial evidence is examined, we believe it meets the test.

With respect to the two contentions, the solution to each point provides a clue to the other, because if it was the Davis rice field being sprayed by the yellow plane Pritchard saw, then the reasonable inference is that it was the appellants' plane he saw. Mr. Walter Davis of Davis Brothers testified that Hess sprayed the rice with 2-4 D and 2-4-5 T around the middle of July (he was not sure of the exact date). He spoke of only one such spraying. Moreover, Hess testified

that the fields could not have been sprayed twice with herbicides because it would have damaged the rice to apply that much.

As to the second point, both direct and circumstantial evidence supports the finding that it was the Davis rice field being sprayed. Direct testimony by David Pritchard placed the plane spraying the herbicides as east of the bayou and south of the tower, or adjacent to the rice field. Added to this testimony is the evidence supplied by plaintiffs' Exhibit 2, which shows the rice field to be surrounded by soybean fields on the east, south and west sides (the exhibit does not identify crops to the north). Mr. John Chronister, an inspector for the State Plant Board, testified that 2-4-5 T, and to some extent 2-4 D, were harmful to soybeans. Thus, the only likely spraying of 2-4 D and 2-4-5 T south of the tower and east of the bayou would be the Davis rice field, being the only rice field fitting that description. Since the plane Pritchard saw was spraying 2-4 D and 2-4-5 T, it follows that it was the Davis field being sprayed and the appellants' plane that was spraying.

Turning to the dispute over dates, appellants ask in effect that we reverse the jury's findings based on their contention that the spraying could only have occurred on July 16 because their records permit no other conclusion. It is true that a variety of appellants' records, consisting of a report to the State Plant Board (plaintiffs' Exhibit 3), invoices from his flying company and supply company, as well as an accounting ledger, support July 16 as the date the spraying was done. But the weight and credibility of these records were matters for the jury to consider and it was not bound to accept the records as more credible than the oral testimony. The proof showed that Hess kept his own records and could have completed them as he chose. There is nothing to suggest the records were altered in any manner, but the credibility of business records of a litigant is an issue for the jury to determine. There is no requirement in the law that a fact-finder must give greater weight to records than to oral testimony in determining when events occur. Besides, while appellants' records seem worthy of probative value, even a casual inspection reveals a distinct variation between

appellants' records and their proof: Hess and Walter Davis testified that when the 80-acre rice field was sprayed by Hess *only* the east half, the 40 acres away from the bayou, was sprayed. But plaintiffs' Exhibit 5, Hess's report to the State Plant Board, reflects that he treated the entire 80 acres of rice, not just the 40 acres he claims to have treated. That discrepancy is further evidenced by appellants' invoice no. 866 of Hamlin Flying Service, Inc., which shows Davis Brothers being charged $372.00 for spraying the full 80 acres ($4.40 per acre of "D & T," or $352.00; and 25 cents per acre of "lo-drift," or $20.00). Hess's report to the State Plant Board also reflects that he applied a spray mixture of 3 gallons per acre. Since 30 gallons of 2-4 D and 2-4-5 T were used (appellants' invoice no. 1597) a ratio of 3 gallons per acre would be correct only if the entire 80 acres of rice were sprayed. Thus, if the testimony of Walter Davis and James Hess is true and only 40 acres of rice was sprayed with herbicides, then appellants' report to the State Plant Board and his invoices are incorrect. Be that as it may, we cannot say that there is no reasonable probability that the events could have occurred so as to be consistent with the jury's findings and we affirm the judgment.