Garland TRICE, Jr. *v.* CITY OF
PINE BLUFF, Arkansas

82-233                                              649 S.W.2d 179

Supreme Court of Arkansas
Opinion delivered April 25, 1983

*Othello C. Cross,* for appellant.

*Berlin C. Jones,* Asst. City Atty., for appellee.

ROBERT H. DUDLEY, Justice. This is an appeal from convictions for violating a city zoning ordinance. The narrow issue involved is whether the ordinance was too vague to be enforced through criminal law. We hold that the ordinance did not give appellant fair warning in definite language that his acts were prohibited and we reverse the conviction. Jurisdiction is in this Court as the case involves the validity of a municipal ordinance as applied. Rule 29 (1) (c).

The City of Pine Bluff has a comprehensive zoning ordinance. Appellant owns two lots in the city which are designated for residential purposes. The city issued a permit to appellant for a non-conforming use, a garage, on the lot across the street from the tract on which his home is located. The neighbors complained to the city about appellant's use of the lot with the garage. However, appellant did not think he was violating the uses proscribed by the zoning ordinance.

As a result, the city charged appellant in municipal court with five separate counts of "Violation of City Ordinance." He was convicted on all counts and appealed to circuit court. There, at the commencement of the consolidated trials, the circuit judge prophetically inquired of the city attorney as follows:

THE COURT: This is City appeal cases Number 82-137-1, Number 137-A-1, 137-B-1, 137-C-1 and 137-D-1. Now, somebody tell me in just plain language, if it is in plain language, what the man is charged with. I assume, as I said before, that it has something to do with driving a truck in an area of the City that a truck is not supposed to be in.

MR. JONES: (City attorney) No, sir.

THE COURT: That's not it.

MR. JONES: That is 137-D, truck driving —

THE COURT: Well, don't tell me what 137-D is if we are not trying 137-D. The only ones I'm interested in are the ones that we are trying and what the man is charged with so when we take the facts I can understand what he — You know — Try to figure it out whether he violated it or not.

MR. KEOUGH: (City attorney) Violation of Section 9 of City Ordinance 4807, the zoning ordinance of the City of Pine Bluff, uses permitted in an R-3 residential district.

The sufficiency of the charge is not questioned on appeal. One count, 137-D, was dismissed by the circuit court but appellant was found guilty on the other four counts. The convictions were had because on four different days a zoning administrator found the following: (1) "grass that needed cutting and some other items stored . . . and a pile of lumber," (2) "an 18 wheel tractor-trailer on the lot," (3) "a pickup truck," and (4) "another truck, approximately one ton." The specific question before this Court is whether the ordinance gives a person fair warning in definite language that the following are prohibited: (1) allowing grass to grow too high and storing lumber, (2) parking a large truck, (3) parking a small truck, and (4) parking a medium truck.

Zoning ordinances may be judicially enforced by either civil or criminal proceedings. *City of Mountain Home* v. *Ray,* 223 Ark. 553, 267 S.W.2d 503 (1954). Civil enforcement, the most common form, is usually by actions for injunctions or declaratory judgments. In those civil actions, an ambiguous ordinance or one with a double meaning may be construed by the courts so that effect is given to the

legislative intent. The rule for enforcement by criminal action is markedly different because there can be neither constructively created criminal offenses nor criminal offenses established by implication. *International Harvester Co.* v. *State,* 79 Ark. 517, 96 S.W. 119 (1906). Ordinances creating criminal offenses must be clear and unambiguous. In civil law we inquire into what the legislature meant but in criminal law we inquire into only what the statute means. *Lewis* v. *State,* 220 Ark. 259, 263, 247 S.W.2d 195, 197 (1952), citing *Giles* v. *State,* 190 Ark. 218, 78 S.W.2d 70 (1935). It is this difference that makes a criminal proceeding a poor vehicle for resolving a zoning dispute such as the one before us. Instead of seeking a declaratory judgment for the interpretation of the ordinance or an injunction against impliedly proscribed uses, the city sought to resolve this dispute by the process of a criminal action. Therefore, we examine the ordinance for vagueness, the standard for criminal statutes.

The standard by which we determine whether an ordinance is vague is whether the ordinance gives a person of average intelligence a fair warning in definite language of the prohibited act. *Jordan* v. *State,* 274 Ark. 572, 626 S.W.2d 947 (1982). The material section of the ordinance is appended to this opinion. There is no warning in definite language that the ordinance in question created a criminal offense for allowing grass to exceed a certain height, or for storing lumber, or for parking trucks. The city's argument tacitly recognizes that there was no warning in definite language but it contends that the ordinance is an exclusive zoning ordinance and therefore all uses other than proper residential uses are criminally excluded. From this basis the city constructively or by implication would create the four criminal offenses. Although this argument might be valid in a civil action to determine permitted uses, *see Ferguson* v. *City of Mountain Pine,* 278 Ark. 575, 647 S.W.2d 460 (1983). it is irrelevant to the interpretation of criminal laws which are subject to strict guidelines of interpretation. *Lewis* v. *State,* 220 Ark. 259, 263, 247 S.W.2d 195, 197 (1952). Moreover, the following questions demonstrate the fallacy in this interpretation of the ordinance. For example, how tall is grass which is too tall? How much lumber, if any, can

be stored? What, besides lumber, is prohibited from being stored? May an automobile be parked on one's land? If so, why may an automobile be parked when a pickup truck may not? Quite obviously, the ordinance contains no written standard by which the questions can be answered. Logic dictates only one conclusion: that a zoning administrator and a judge decide what constitutes an offense without written standards. In *Davis* v. *Smith,* 266 Ark. 112, 118, 583 S.W.2d 37, 41 (1979), we stated:

> In criminal cases, placing discretion in the hands of the police without prescribing any standards governing its exercise is another instance which renders a statute void for vagueness. *Papachristou* v. *City of Jacksonville,* supra [405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972)] .... A law which, due to vagueness, leaves basic policy matters in the criminal law field to either policemen or judges on an ad hoc and subjective basis, with attendant dangers of arbitrary and discriminatory application, is also impermissible. *Grayned* v. *City of Rockford,* supra [408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)]. A law that is so vague and standardless that it leaves judges or jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case fails to meet due process requirements. *Giaccio* v. *Pennsylvania,* 382 U.S. 399, 86 S.Ct. 518, 15 L.Ed.2d 447 (1966). See also, *Andrew Jackson, ex parte,* 45 Ark. 158.

If an ordinance can be construed to create a criminal offense, not by its definite language, but merely according to a zoning administrator's interpretation of that ordinance, we become a state governed not by laws but by administrators.

The city seeks to minimize this danger by placing reliance on the argument that appellant knew that in his application for a permit for a non-conforming use, he stated the garage would be used to park an automobile and knew the manner in which the city interpreted its own ordinance. Therefore, the city argues, he had fair warning. However, criminal offenses cannot properly rest upon what an application stated when that application does not form a part of

the charge, or upon what the neighbors thought the ordinance meant or upon what warning an administrator gave based upon his own interpretation of the ordinance. The validity of the criminal provisions of the ordinance is determined by the language of the ordinance. That language is vague and the conviction must be reversed.

Reversed and dismissed.

HICKMAN and HAYS, JJ., dissent.

## APPENDIX

### SECTION 9
### R-3 RESIDENTIAL

A.   General Description and Intent of District.

This District is intended for use in residential neighborhoods which meet one or both of the following criteria:

1. Lot sizes are generally smaller than those required in the "R-1" zone in area or dimension.
2. It can be established that the residential character of the neighborhood can best be preserved or improved by allowing a broader mix of uses than allowed in "R-1" areas.

B.   Permitted Uses

1.   Single Family Dwellings
2.   Accessory Uses and Buildings
3.   Duplex (with lot area of 7,800 sq. ft. and a lot width of 65 ft.)
4.   Home Occupation
5.   Any single lot subdivided and recorded as of the effective date of this Ordinance, with a fifty (50) foot width at the building line, and five thousand (5,000) square feet of area, may be used at the discretion of the Zoning Administrator where required R-3 setbacks can be met.

6. Office uses which comply with the following additional regulations and other city regulations.

C. Uses Permitted Upon Review and Approval of the Planning Commission

The Planning Commission may impose special conditions relating to such considerations as the site plan, screening or parking as a condition for approval of the following uses or any other uses it deems appropriate for the protection of the public health, safety and welfare.

1. Parks and Playgrounds
2. Day-Care Family Home
3. Rooming House
4. Cemetery
5. Public & Semi-public Uses
6. Golf Course
7. Tennis Courts
9. Public Elementary Schools and other educational institutions with curriculum equivalent to a Public Elementary School.
10. Churches (See Section 24-(M))
11. Garage Apartments (Occupied by Relatives)
12. Professional Office in a converted functionally obsolete single family residence.
13. Restaurant in a converted functionally obsolete single family residence.
14. Other uses deemed appropriate in the opinion of the Board of Zoning Adjustment which conform to the basic intent of this district and which can be demonstrated to be equal to or less intense than other permitted uses in this district.

D. Parking Requirements

Two (2) off-street parking spaces shall be required for duplexes and single family residences. Other uses shall provide parking in conformance with provisions of Section 23.

E.   Height, Area and Structure Regulation

1.   *Height Regulations* — No building shall exceed two and one-half stories nor shall it exceed thirty-five (35) feet in height. The height shall be measured from the Finished Floor Level (FFL).

2.   *Space Regulations*
a. *Lot Area:* A minimum of seven thousand two hundred (7,200) square feet. A duplex must have a minimum of seven thousand, eight hundred (7,800) square feet.
b. *Lot Width:* A minimum width at the building setback line of sixty (60) feet. A duplex shall have a minimum of sixty-five (65) feet.
c. *Front Yard:* A minimum of twenty-five (25) feet.
d. *Side Yards:* The minimum side yard shall be five (5) feet. The side yard on the street side of each corner lot shall not be less than twenty (20) feet.
e. *Rear Yard:* A minimum of twenty (20) feet.
f. *Accessory Buildings* shall be set back from any property line a minimum of five (5) feet.
g. *Building Coverage:* A maximum of forty-five (45) percent of the lot area.

3.   *Structure Regulations*
Only one dwelling unit per lot, regardless of lot size, will be permitted except garage apartments as provided for in this Ordinance.

F.   Dimensions

Each structure shall have a minimum total dimension on each side of twenty (20) feet and the entire twenty (20) feet shall be finished on a permanent foundation.

More than one modular unit may be joined and considered one structure providing that joints are completely sealed in such a manner that they are not discernible from the exterior of the structure, and in no way indicates mobility. This section shall not include storage buildings or other minor accessory structures.

134

DARRELL HICKMAN, Justice, dissenting. Rather than go to the record to reverse this decision, we should only go to the record to affirm the decision. Rather than view the evidence most favorably to the appellant, we must view it most favorably to the appellee. *Hamlin Flying Service, Inc.* v. *Breckenridge,* 275 Ark. 188, 628 S.W.2d 312 (1982). Rather than search for a way to find an ordinance unconstitutional we must first presume it is constitutional and try to give it a construction which would meet constitutional tests if that construction is reasonable. *Board of Adjustment of Fayetteville* v. *Osage Oil & Transportation, Inc.,* 258 Ark. 91, 522 S.W.2d 836 (1975), *cert. denied* 423 U.S. 941 (1975); *Connors* v. *Riley,* 395 F. Supp. 1244 (W.D. Ark. 1975).

The majority opinion decides a case that essentially was not presented to the trial court, nor fairly represented as such on appeal. If our appellate rules are to have any significance, if parties who prevail in trials are to have any security in the judicial process, and if trial judges are to have any confidence in our approach to reviewing cases, this case must be affirmed.

It is not for us to say how tall grass can grow, or what vehicles can be parked in a residential area, and those are not the questions to us. Our role in this case is simply to review two questions presented: Is the ordinance constitutional by any reasonable measure, and was there substantial evidence to support the trial court's decision.

The evidence stated most favorably to the appellee is this: Trice, the appellant, had been a source of irritation to his neighbors for some time because he ran a business from his home which is located in a residential area in Pine Bluff, an area that can be used for no other purpose except residential. Trice bought a vacant lot across the street from his house, which he admitted was purchased as a place to park his business vehicles, or just vehicles, as he insists. He was granted permission to build a garage on it but the permission was limited to using it for parking automobiles. In other words, he was deliberately deceptive.

After several complaints were made of his use of the lot, a city official checked the lot on four separate days: November 16, 17, 18, and December 1, 1981. On those days the official noted what he thought were improper uses. According to his testimony, which was supported by photographs, on one day there was an 18-wheel trailer and a one-ton truck with a fuel tank parked on the property. There were also tall grass, tires, and a pile of lumber on the lot. Over the next two days the trailer was gone but the other things remained. On December 1, 1981, an 18-wheel tractor-trailer was on the lot being cleaned by a steam cleaning service.

Trice admitted he was using the lot for his business and he was charged with an improper use of the property. The circuit judge, sitting without a jury and charged with finding the facts, simply summed up the evidence by saying:

> He's in the trucking business. . . . The garage was built for automobiles, personal use, and that was permitted. Maybe that shouldn't have been permitted. I don't know. But nevertheless, a ton and a half truck, a pickup truck, an automobile and an 18-wheeler with a truck bed and a pile of lumber indicates to me there is something going on there besides sleeping and eating, and I'm not condemning the work as such but if you are going to carry on that kind of operation you are going to have to find another place to do it. You can park your truck as I understand at your residence overnight, but you just simply can't use that vacant lot over there as a place to operate from to unload excess lumber or to unload a torn-up truck bed or to clean up the equipment or repair the equipment. That's a part of your business operation, and it does violate the ordinance.

So all we must decide is whether there is substantial evidence that Trice was improperly using the property for something other than a residential purpose. Indeed it is not even disputed that was what Trice was doing, and there was no objection to the charge. So it is not a question of height of the grass, or notations by a civil servant of violations; it is a question of reviewing the facts found by a trial judge, which

we must honor if substantially supported by the evidence. The majority concedes no objection was made as to the charges, but dwells on them anyway.

The ordinance in question is a routine but comprehensive zoning ordinance that declares what uses property may be put to and necessarily what uses may not be employed. The ordinance is not in the record, only references were made to it at the trial. We cannot take judicial notice of a municipal ordinance. *Orrell* v. *City of Hot Springs,* 265 Ark. 267, 578 S.W.2d 18 (1979). The excerpt reprinted by the majority was furnished by the appellee and did not appear in the record.

We can surmise there was a penal provision allowing a fine for each violation of the ordinance; that is not questioned, but the provision itself is not in the record. We do know there is no question that this neighborhood was exclusively zoned as a residential area. Residential zoned property may not, of course, be used for commercial, industrial, or agricultural uses, which are the other general categories, unless specifically authorized in the ordinance. The appellant specifically attacks one provision of the ordinance as unconstitutional; that provision defines the accessory uses to which an owner may put his property. It obviously controls this case, and is not even mentioned by the majority. The provision, quoted to us by the appellant, defines an accessory use as:

A use customarily incidental, appropriate and subordinate to the principal use of land on building; and located on the same lot.

The appellant argues in his brief this is an unconstitutional provision because these are broad unspecific terms "which do not lend themselves to ready measurement."

In *Martin* v. *State,* 261 Ark. 80, 547 S.W.2d 81 (1977), we upheld as constitutional some statutory language defining one kind of first degree battery as causing serious injury "under circumstances manifesting extreme indifference to the value of human life." If the average person can compre-

hend that language, surely one can know what uses are customary, incidental, appropriate and subordinate to residential use. Necessarily it means, when the zoning ordinance is given a reasonable interpretation, that one cannot use such property for commercial, business, industrial or agricultural purposes.

Common sense has to be applied to the interpretation of statutes and ordinances. *Henderson* v. *Russell,* 267 Ark. 140, 589 S.W.2d 565 (1979). Would it satisfy the majority if the ordinance had mentioned all the "Thou shalt nots" instead of succinctly and clearly stating what the property could be used for? That would make much less sense than spelling out, as the ordinance apparently does, only what the property may be used for.

I would not strain to strike down this ordinance, in the dark, so to speak. The appellant essentially says the ordinance is invalid because of the "accessory use" of the provision. And that is the question I would answer.

The ordinary person would not have to speculate to the meaning of this provision. *Jordon* v. *State,* 274 Ark. 572, 626 S.W.2d 947 (1982). An ordinance which " . . . defines boundaries sufficiently distinct for all citizens, policemen, juries and appellate judges is not impermissibly vague." *Davis* v. *Smith,* 266 Ark. 112, 583 S.W.2d 37 (1979). *See Martin* v. *State, supra.*

The provision of the ordinance under attack is part of a zoning code, the primary purpose of which is to define how one may and may not use property. There is a penal sanction for violations.

This is a simple case. The appellant was obviously running a business on a residential lot, and that is what the trial court found. The appellant knew he could not run a trucking business there, yet he proceeded to do so. I would apply our usual rules of appellate procedure and affirm the case. I would make no blanket rule concerning any and all provisions of this ordinance on the chance the parties have

submitted to us all relevant portions. *See Bethea* v. *City of Little Rock,* 272 Ark. 159, 612 S.W.2d 320 (1981).

HAYS, J., joins in this dissent.