The Honorable Evelyn Ammons State Representative Post Office Box 1005 Waldron, Arkansas 72958
Dear Representative Ammons:
This is in response to your request, made on behalf of the Hon. Donald Goodner, Municipal Judge for Scott County, for an opinion on several questions relating to Regulation 18-04 (the "Regulation") of the Arkansas State Game and Fish Commission (the "Commission"), which provides:
 HUNTING FROM ROAD PROHIBITED. It shall be unlawful to hunt from, or shoot across any city, county, state, or federally maintained road or the right-of-way thereof. It shall also be unlawful to hunt from or shoot across the main west levee of the Mississippi River from the Louisiana-Arkansas State Line to the intersection of State Highway 11 north of Grady, Lincoln County, Arkansas. NOTE: It shall be prima facie evidence during modern gun and muzzleloading deer season that a person is hunting if the person is in possession of a loaded firearm on any city, county, state, or federally maintained road or the right-of-way thereof in an area in which wild game is likely to be present. Firearms being carried in a motor vehicle or conveyance must be unloaded and enclosed in a case or placed in a gun rack (unloaded) while on any city, county, state or federally maintained road or the right-of-way thereof in an area in which wild game is likely to be present. It shall also be unlawful to hunt within 50 yards from the center of any city, county, state, or federally maintained road during any modern gun season.
EXCEPTIONS:
 (1) Handguns carried in a motor vehicle for purpose other than hunting.
 (2) Persons engaged in a lawful action to protect their livestock or property.
(3) Law enforcement officials in respect to the official job duties.
PENALTY: $100.00 TO $1,000.00.
Your questions are set forth and answered below in the order posed. Your first question is:
 Amendment 35 established the Game and Fish Commission. Under that amendment does the Game and Fish Commission have the power to regulate the transportation of guns on state, county, and federal roads?
The Commission is vested with the "control, management, restoration, conservation and regulation of birds, fish, game and wildlife resources of the State. . . ." Ark. Const. amend. 35, § 1. The constitution also provides in part:
 The Commission shall have the exclusive power and authority to issue licenses and permits, to regulate bag limits and the manner of taking
game and fish and furbearing animals, and shall have the authority to divide the State into zones, and regulate seasons and manner of taking
game, and fish and furbearing animals therein, and fix penalties for violations.
Ark. Const. amend. 35, § 8 (emphases added).
In response to your question, it is true, of course, that nothing in the constitution specifically authorizes the Commission to regulate the transportation of guns on public roads. It is my opinion, however, that the Commission has ample constitutional authority to adopt and enforce the Regulation as written.
It was held in State, ex rel. Wright v. Casey, 225 Ark. 149, 152,279 S.W.2d 819 (1955), that the constitutional provisions quoted above give the Commission "full and complete administrative power and authority to promulgate rules and regulations necessary for the conservation and preservation of all wildlife," provided such rules and regulations are not unreasonable or arbitrary. The Commission has "a very broad discretion in determining how wildlife shall be conserved." Arkansas State Game andFish Comm'n v. Stanley, 260 Ark. 176, 181, 538 S.W.2d 533 (1976). The court in Stanley also quoted from an earlier case:
 [The Commission,] as opposed to the Legislature, is vested with the power to make such rules and regulations as is deemed necessary to protect and conserve the wildlife resources of the state. In the exercise of its police power the Commission has determined that it should prohibit the sale of game fish from private impoundments of water. The Commission has a wide discretion within which it may determine what the public interest demands, and what measures are necessary to secure and promote such requirements. The only limitation upon this power to formulate these rules and regulations, which tend to promote the protection and conservation of the wild life resources of the state, and which tend to promote the health, peace, morals, education, good order and welfare of the public is that the rules and regulations must reasonably tend to correct some evil, and promote some interest of the commonwealth, not violative of any direct or positive mandate of the constitution. * * * The Commission, as trustee for the people of this state, has the responsibility and is charged with the duty to take whatever steps it deems necessary to promote the interest of the Game and Fish Conservation of this state; subject only to constitutional provisions against discrimination, and to any valid exercise of authority under the provisions of the Federal Constitution. * * *
Stanley, 260 Ark. at 182-183, quoting Farris v. Arkansas State Game andFish Comm'n, 228 Ark. 776, 784, 310 S.W.2d 231 (1958).
In sum, the Commission possesses, in general, "a wide discretion" in determining how wildlife shall be conserved and promulgating regulations to that end and, in particular, express constitutional authority to regulate the manner in which game is taken. In my opinion, a ban on hunting from public roads is a reasonable exercise of the Commission's discretion and authority.
It is true, as implied by your question, that the Regulation indirectly regulates the transportation of firearms on public ways. The Regulation does not, however, make the transportation of firearms, loaded or unloaded, illegal. It merely makes the possession of a loaded weapon, during certain times and in certain areas, prima facie evidence that the possessor is hunting, subject to several specified exceptions. For that reason, I express no opinion on the extent to which the Commission may directly regulate the transportation of firearms on public roads by, for example, making such transportation unlawful in and of itself.
It is my opinion, however, that the presumption set forth in the Regulation is not an unreasonable or arbitrary mechanism to aid in the enforcement of the ban on hunting from public roads. A somewhat similar enforcement mechanism, a ban on the sale of game fish raised on fish farms, was upheld in Farris, where the court stated:
 Even though a majority of this Court is of the considered opinion that it is highly advantageous to that commendable business of fish farming to raise game fish, along with other fish, which the fish farmers are permitted to raise and market for a profit, still the Commission, through its broad discretionary powers in conservation measures, has determined that to market these game fish would hamper if not make it impossible to enforce its rules and regulations so directly concerned with carrying out its duties in the conservation of the wild life resources of the state. The Commission is a trustee for the people of this State, charged with the duty of conserving the wild life resources. Its powers are not unlimited, but until such time as it is more clearly shown that the Commission has abused its broad discretionary powers in matters of conservation, then it cannot be contended that the Commission has exceeded the limits of its powers.
Farris, 228 Ark. at 781-782.
In my opinion, a presumption that a person possessing a loaded firearm at a time and in an area specified in the Regulation is in fact hunting is probably vital, or at least helpful, to the Commission's enforcement of the ban on hunting from public roads, and does not constitute an abuse of the Commission's broad discretion.
Your second question is:
 Does this regulation conflict with Article II, Section 5, of the Constitution of Arkansas, which provides that "The Citizens of this State shall have the right to keep and bare [sic] arms for their common defense["]?
The Supreme Court of Arkansas has repeatedly held that the state may, as a matter of its police power, place appropriate restrictions on one's right to bear arms. See Jones v. State, 314 Ark. 383, 862 S.W.2d 273
(1993); Haile v. State, 38 Ark. 564 (1882); Wilson v. State, 33 Ark. 557
(1878); Fife v. State, 31 Ark. 455 (1876); Carroll v. State, 28 Ark. 99
(1872). In Jones, the court upheld A.C.A. § 5-73-120(a) (Cum. Supp. 1993), which makes unlawful in certain circumstances the mere possession of a handgun, whether loaded or not. In my opinion, the Regulation is an appropriate restriction on the possession of weapons, particularly in view of the fact that it does not in any way prohibit or restrict the right topossess a weapon, but merely makes possession of a loaded weapon at certain times and in certain areas prima facie evidence that the possessor is hunting.
Your third question is:
 This regulation apparently only applies "in an area in which wild game is likely to be present". Is this unconstitutionally vague, because I quite frankly do not know here [sic] wildlife is likely to occur in Scott County? If it is not unconstitutionally vague, then what criteria do we use to determine "where wildlife is likely to occur"?
Initially, it should be noted that the fundamental prohibition of the Regulation (i.e., the ban on hunting from public roads) is not limited to areas in which wild game is likely to be present; rather, the Regulation bans hunting from any "city, county, state, or federally maintained road or the right-of-way thereof" anywhere in the state. Those parts of the Regulation mentioning areas in which wild game is likely to be present provide, in essence, that the presumption that one in possession of a loaded weapon on a public road is hunting will apply only in those areas where wild game is likely to be present; in other words, the presumption of hunting will not apply to one in possession of a loaded weapon on a public road if the road is not in an area where wild game is likely to be present.
In State v. Torres, 309 Ark. 422, 831 S.W.2d 903 (1992), the court discussed the standards by which criminal statutes are assessed when challenged as unconstitutionally vague:
 The norm by which we determine when a statute is void-for-vagueness is whether it lacks ascertainable standards of guilt such that persons of average intelligence must necessarily guess at its meaning and differ as to its application. McGalliard v. State, 306 Ark. 181, 813 S.W.2d 768 (1991). The law must give fair warning in definite language of the prohibited act. Trice v. City of Pine Bluff, 279 Ark. 125, 649 S.W.2d 179
(1983). In addition to the fair warning, a statute is also void-for-vagueness if it is so broad that it becomes susceptible to arbitrary and discriminatory enforcement. Id. Nevertheless, flexibility, rather than meticulous specificity or great exactitude, in a statute is permissible as long as its reach is clearly delineated in words of common understanding. Davis v. Smith, 266 Ark. 112, 583 S.W.2d 37 (1979). Moreover, impossible standards of specificity are not constitutionally required, even in criminal statutes. Id. A statute will meet constitutional muster if the language conveys sufficient warning when measured by common understanding and practice. Id.
Additionally, it is not necessary that all kinds of conduct falling within the reach of the statute be particularized and the statute will not be struck down as vague only because marginal cases could be put where doubts might arise. Id.
Torres, 309 Ark. at 424-425.
Although there can be no assurance that a court would agree, it is my opinion that the Regulation is not impermissibly vague merely because it requires, in certain cases, a determination of whether wild game is likely to be present in a particular area. I reach this conclusion for several reasons, discussed below.
First, the Regulation clearly puts the public on notice of the conduct that is prohibited: hunting from a roadway. There is nothing vague or uncertain about the Regulation's fundamental prohibition.
Second, because the allegedly vague portion of the Regulation is part of a rebuttable presumption or inference rather than an element of the violation, a determination about the likelihood of the presence of game is not necessary in each case. Where the evidence demonstrates that the accused was in fact hunting from a public road, it becomes irrelevant whether the hunting occurred in an area where wild game is likely to be present, and no proof on that issue need be introduced. In my view, the entire Regulation is not invalid merely because a portion thereof that need not be addressed in each case is allegedly vague.
Third, even though it cannot be conclusively determined in advance whether wild game is likely to be present in a given area, it is my opinion that the standard is sufficiently definite, particularly as an element of a rebuttable presumption or inference rather than as an element of the violation. I believe most residents of Arkansas of ordinary intelligence generally have a good idea of, and agreement upon, where wild game is likely to be present and where it is not. If I am correct, this suggests that cases wherein there is genuine doubt and good faith difference of opinion would be marginal cases, as discussed above in the quoted language from Torres.
Fourth, even to the extent the standard may be said to be vague, the Regulation clearly provides that a person may avoid the presumption of hunting by unloading his weapon and stowing it in a case or on a rack. In my view, a court probably would be less likely to invalidate vague language where the statute nevertheless provides a clear means of avoiding criminal liability.
Finally, the burden of proving that an area is one in which wild game is likely to be present is presumably upon the state in those cases in which it wishes to rely upon the presumption of hunting. The presumption permits the state to prove the fact of hunting by inference from certain facts, but nothing in the Regulation suggests that the state does not retain the burden of proving the likelihood of the presence of game in the area.
With respect to the second part of your question, it is my opinion that the likelihood of the presence of game in an area will be determined on a case-by-case basis in consideration of all the relevant facts. In general, however, it appears likely that a court might consider, among other things, the absence, or the presence and extent, of human development and habitation; the absence, or the presence and extent, of cover, food, and water available to wild animals; whether the area has historically been used as a hunting ground; and the extent to which the appearance of wild game in the area might generally be seen to be worthy of comment.
Your fourth question is:
 This regulation never actually says that it is illegal to carry a loaded firearm. It provides that "Note: It shall be prima facie evidence during modern gun and muzzleloading deer season that a person is hunting if the person is in possession of a loaded firearm on any city, county, state, or federally maintained road or the right-of-way thereof in an area in which wild game is likely to be present". Does the Game and Fish Commission have the power to make Rules of Evidence? Perhaps I am wrong, but I was under the impression that the Rules of Evidence are set forth by the Arkansas Supreme Court.
In my opinion, the promulgation and enforcement of the rule is within the Commission's constitutional grant of authority. As discussed above, the constitution delegates to the Commission, rather than the General Assembly, the "power to make such rules and regulations as is deemed necessary to protect and conserve the wildlife resources of the state."Stanley, 260 Ark. at 182, quoting Farris, 228 Ark. at 784. It seems clear, therefore, that the Commission is empowered to create presumptions or inferences in the area of wildlife conservation to the same extent that the General Assembly is in other areas.
The General Assembly has created similar presumptions or inferences in many areas. See, e.g., A.C.A. §§ 5-36-115(c) (Cum. Supp. 1993) (failure to return rented property as prima facie evidence of intent to commit theft); 5-36-202(b) (Cum. Supp. 1993) (presentation of false information as prima facie evidence of intent to commit theft of public benefits);5-37-304(a) (as amended by Act 335 of 1995) (the making of a check on a bank where no account exists as prima facie evidence of intent to defraud); 5-37-404(a) (Repl. 1993) (possession of certain equipment asprima facie evidence to commit theft of cable television services);5-38-310(a)(3) (Cum. Supp. 1993) (escape of fire as prima facie evidence of failure to take adequate precautions); 5-64-401(d) (Pamphlet 1995) (possession of specified quantities of controlled substances as rebuttable presumption that possessor has intent to deliver); and 5-73-121(b) (Repl. 1993) (length of knife blade as prima facie evidence that the knife is carried as a weapon).
The validity of a rebuttable presumption or inference depends upon there being a rational connection between the proven fact (here, the possession of a loaded weapon on a roadway in a specified area at a specified time) and the fact to be presumed therefrom (here, the act of hunting). Stonev. State, 254 Ark 1011, 498 S.W.2d 634 (1973); see also Jackson v.State, 259 Ark. 780, 536 S.W.2d 716 (1976). In my opinion, there is a rational connection between the possession of a loaded weapon at certain times and places, and an inference that the possessor is hunting.
In my opinion, the legislative creation of statutory presumptions (and thus, in view of the Commission's unique constitutional status, its administrative creation of the presumption in the Regulation) is not inconsistent with anything in the Arkansas Rules of Evidence, and does not constitute the making of a rule of evidence. The Rules themselves, in fact, recognize the validity of such presumptions and address their treatment in jury trials. See A.R.E. Rule 303; see also Smith v. State,264 Ark. 874, 575 S.W.2d 677 (1979).
Your fifth question is:
 The next sentence of the regulation provides that "Firearms being carried in a motor vehicle or conveyance must be unloaded and enclosed in a case or placed in a gun rack (unloaded) while on any city, county, state, or federally maintained road or the right-of-way thereof in an area in which wild game is likely to be present." The regulation does not say that it is unlawful to carry a loaded gun but rather that they must be carried unloaded. Since this regulation does not say that it is unlawful to carry a loaded gun, it is unlawful to do so?
In my opinion, nothing in the Regulation makes it unlawful to possess a loaded weapon. As discussed above, the Regulation makes hunting from roadways unlawful. The possession of a loaded weapon on a roadway in certain areas at certain times merely creates a rebuttable presumption that the possessor is hunting.
Except in the context of actual or assumed facts, it is impossible to answer definitively your general inquiry on whether it is unlawful to possess a loaded gun. It is my opinion that, while there is no blanket prohibition on the possession of a loaded weapon within the state, the Commission's regulations and other applicable state law (see, e.g., Acts 411 and 419 of 1995 (providing for the issuance of licenses to carry concealed handguns), and A.C.A. §§ 5-73-101 to -131 and 5-73-201 to -211 (Repl. 1993, Cum. Supp. 1993, Pamphlet 1995, and as amended by Acts 443, 453, 595, 832, 1201, 1202, 1223, and 1325 of 1995) (provisions of the criminal law relating to the possession and use of weapons)) must be consulted in order to determine whether possession of a loaded firearm is unlawful in a particular fact situation.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General J. Madison Barker.
Sincerely,
WINSTON BRYANT Attorney General
WB:JMB/cyh