## FIFE VS. THE STATE.

1. *The right to bear arms—Constitutional provision.*

   The provisions of Article ii of Amendments to the Constitution of the United States, guaranteeing to the citizens the right to keep and bear arms, was not intended as a restraint on State legislation.

2. —————: *Same.*

   The provisions of Article ii, sec. 5, of the Constitution of this State, securing to the citizens the right to keep and bear arms for their common defense, relates to such arms as are used for purposes of war; and does not prevent the legislature from prohibiting the wearing of such weapons as are not used in civilized warfare, and would not contribute to the common defense.

3. —————: *Construction of the act prohibiting.*

   The act of February 16th, 1875, which prohibits the carrying of any pistol whatever, as a weapon, refers to such pistols as are usually carried in the pocket, and of a size to be concealed about the person, and used in private quarrels; and not to such as are within the provisions of the Constitution.

ERROR to *Jefferson* Circuit Court.

Hon. J. A. WILLIAMS, Circuit Judge.

*Gallagher & Newton,* for the plaintiff in error.

*Henderson, Attorney General, contra.*

ENGLISH, CH. J.:

Alfred Fife, the plaintiff in error, was charged, before a justice of the peace of Jefferson County, with carrying a pistol as a weapon, contrary to the act of 16th February, 1875, convicted, and appealed to the Circuit Court, where he was tried anew, and again found guilty ; moved for a new trial, which was refused ; final judgment rendered against him for the fine imposed by the jury, and he brought error.

One witness testified, on the trial, that he was walking down a street in Pine Bluff, about the 17th of September, 1875, when he met plaintiff in company with one Terry, near Trulock's bank.   Plaintiff had a banjo under his left arm, and a pistol in

his hand. Witness spoke to Terry, when plaintiff raised his pistol, and asked him what he said? Witness replied that he was talking to Terry. Plaintiff laid the guard of his pistol, which he held in his hand, against the face of witness, and said that, meaning the pistol, ruled the world, to which witness replied: "Yes, it did." Witness saw the pistol, and thought it was a revolver.

On the same day, perhaps, another witness saw plaintiff in a drug store, with a pistol in his hand. He did not notice it particularly, but thought it was a revolver.

On the evening of the same day, plaintiff was playing cards in a saloon, when an intoxicated man came in, and plaintiff undertook to put him out. They clenched and fell behind a screen. After the difficulty was over, the saloon keeper found on the floor the cylinder of a pistol, but he saw plaintiff with no pistol.

It is probable, from all the evidence, that the plaintiff was carrying a pocket revolver.

It is submitted for the plaintiff that the act under which he was convicted is in conflict with Article ii Amendments to the Constitution of the United States, and sec. 5 of the Declaration of Rights of the Constitution of 1874.

The act provides:

"That any person who shall wear or carry any pistol of any kind whatever, or any dirk, butcher or Bowie knife, or sword or spear in a cane, brass or metal knucks, or razor, as a weapon, shall be adjudged guilty of a misdemeanor, etc., etc. *Provided,* that nothing herein contained shall be so construed as to prohibit any person wearing or carrying any weapon aforesaid on his own premises, or to prohibit persons traveling through the country, carrying such weapons while on a journey with their baggage, or to prohibit any officer of the law wearing or carrying such weapons when engaged in the discharge of his official

duties ; or any person summoned by such officer to assist in the execution of any legal process, or any private person legally authorized to execute any legal process to him directed." Sec. 1, act February 16th, 1875. (Pamph. 1874–5, p. 155.)

Article ii, amendments to the Constitution of the United States, declares that:

"A well regulated militia, being necessary to the security of a free State, the right of the people to keep and bear arms shall not be infringed."

Judge Story, commenting on this clause of the Constitution, said:

ᒥThe importance of this article will scarcely be doubted, etc. The militia is the natural defense of a free country against sudden foreign invasion, domestic insurrection, and domestic usurpations of power by rulers. It is against sound policy for a free people to keep up large military establishments and standing armies in time of peace, both from the enormous expenses with which they are attended, and the facile means which they afford the ambitious and unprincipled rulers to subvert the government or trample upon the rights of the people. The right of the citizens to keep and bear arms has justly been considered as the palladium of the liberties of a republic, since it offers a strong moral check against the usurpation and arbitrary power of rulers, and will generally, even if these are successful in the first instance, enable the people to resist and triumph over them."⸥ 2 Story on the Const., sec. 1896–7.

Mr. Cooley remarks upon the same article:

"Among the other defenses to personal liberty should be mentioned the right of the people to keep and bear arms. A standing army is peculiarly obnoxious in any free government, etc. The alternative to a standing army is a well regulated militia, but this cannot exist unless the people are trained to bearing

arms.   How far it is in the power of the Legislature to regulate
this right we shall not undertake to say, as happily there has been
very little occasion to discuss that subject by the courts." Const.
Lim., 350.

It is manifest from the language of the article, and from the
expressions of these learned commentators, that the arms which
it guarantees American citizens the right to keep and to bear,
are such as are needful to, and ordinarily used by a well regu-
lated militia, and such as are necessary and suitable to a free peo-
ple, to enable them to resist oppression, prevent usurpation, repel
invasion, etc., etc.

This article, however, is a restraint upon federal, and not upon
State legislation. Andrews v. The State, 3 Heiskell (Tenn.), 172;
Barron v. City of Baltimore, 7 Peters, 243; Fox v. Ohio, 5
Howard, 434; Smith v. Maryland, 18 id., 71; Withers v. Buckley
et al, 20 id.; Twitchell v. Commonwealth, 7 Wallace, 321.

Sec. 5, Art. ii, of the present Constitution of this State, de-
clares that:

"The citizens of this State shall have the right to keep and
bear arms for their common defense."

There was a similar clause in the Bill of Rights of the Con-
stitution of 1836, and in The State v. Buzzard, 4 Ark., 18, this
court held, in effect, that it and the second article of the Amend-
ments to the Constitution of the United States had a common
purpose, and that the act prohibiting the wearing of concealed
weapons was in conflict with neither of them. · See Gantt's Di-
gest, sec. 1517.

In Aymett v. State, 2 Humph., 158, Judge Green said: "As
the object, for which the right to keep and bear arms is secured,
is of a general nature, to be exercised by the people in a body
for their common defense, so the arms—the right to keep which
is secured—are such as are usually employed in civil warfare,

and constitute the ordinary military equipments. If the citizens have these arms in their hands, they are prepared in the best possible manner to repel any encroachments upon their rights, etc. * * * The Legislature, therefore, have the right to prohibit the wearing or keeping weapons dangerous to the peace and safety of the citizens, and which are not usual in civilized warfare, and would not contribute to the common defense."

Mr. Bishop, treating of the provision of the Constitution of the United States, which secures to the people the right to keep and bear arms, says: "If we look to this question in the light of judicial reason, without the aid of specific authority, we shall be led to the conclusion, that the provision protects only the right to keep such arms as are used for purposes of war, in distinction from those which are employed in quarrels and brawls and fights between maddened individuals, since such, only, are properly known by the name of arms, and such, only, are adapted to promote the security of a free State. In like manner, the right to bear arms refers merely to the military way of using them, not to their use in bravado and affray." 2 Crim. Law, sec. 124.

By the Constitution of Tennessee (1870), "The citizens of this State have a right to keep and bear arms for their common defense."

In *Andrews* v. *The State*, 3 Heiskell, 171, an act prohibiting any person from carrying, publicly or privately, a dirk, swordcane, Spanish stiletto, belt or pocket pistol or revolver, with a provision for exceptional cases, as in our act, was held to be constitutional.

Judge Freeman, who delivered the opinion of the court, after showing that the object of the second article of the amendments to the Constitution of the United States, and that of the clause of the Constitution of Tennessee above copied, was the same,

said : " In order to arrive at what is meant by this clause of the State Constitution, we must look at the nature of the thing itself, the right to keep which is guaranteed. It is ' arms ;' that is, such weapons as are properly designated as such, as the term is understood in the popular language of the country, and such as are adapted to the ends indicated above, that is, the efficiency of the citizen as a soldier, when called on to make good the defense of a free people ; and these arms he may use as a citizen, in all the usual modes to which they are adapted, and common to the country. What, then, is he protected in the right to keep and thus to use ? Not everything that may be useful for offense or defense, but what may properly be included or understood under the title of ' arms,' taken in connection with the fact that the citizen is to keep them, as a citizen. Such, then, as are found to make up the usual arms of the citizen of the country, and the use of which will properly train and render him efficient in defense of his own liberties, as well as of the State. Under this head, with a knowledge of the habits of our people, and of the arms in the use of which a soldier should be trained, we hold that the rifle, of all descriptions, the shot gun, the musket and repeater, are such arms, and that, under the Constitution, the right to keep such arms cannot be infringed or forbidden by the Legislature. Their use, however, to be subordinated to such regulations and limitations as are or may be authorized by the law of the land, passed to subserve the general good, so as not to infringe the right secured, and the necessary incidents to the exercise of such rights."

The learned judge might well have added to his list of war arms, the sword, though not such as are concealed in a cane.

By the word " repeater," we suppose the judge meant the army and navy repeaters, which, in recent warfare, have very generally superseded the old-fashioned holster, used as a weapon in the

battles of our forefathers. He certainly did not mean the pocket revolver, for, in *Page* v. *The State*, 3 Heiskell, 198, the same court held, that Page was properly convicted for carrying such pistol. Nicholson, judge, who delivered the opinion of the court, said: "The evidence fully establishes the fact that the pistol carried by Page (a pistol called a revolver, about eight inches long) was not an arm for war purposes, and, therefore, under the ruling of this court, in the case of *Andrews* v. *The State*, the carrying of which the Legislature could constitutionally prohibit."

Our act prohibits the carrying, as a weapon, "any pistol of any kind whatever," with provisions for exceptional cases.

Pistol is from *Pistola,* a town in Italy, where pistols were first made. A pistol is a small fire-arm, or the smallest fire-arm used, intended to be fired from one hand, differing from a musket chiefly in size. Pistols were introduced into England in the year 1521. Webster.

In the act, the pistol is associated, in the prohibited list of weapons, with the dirk, butcher or Bowie knife, the sword or spear in a cane, brass or metal knucks, and the razor.

From the company in which the pistol is placed, and the known public mischief which the Legislature intended by the act to prevent, it is manifest that the pistol intended to be proscribed is such as is usually carried in the pocket, or of a size to be concealed about the person, and used in private quarrels and brawls, and not such as is in ordinary use, and effective as a weapon of war, and useful and necessary for "the common defense."

The indications in the evidence are, that the plaintiff in error was carrying a pistol of that class or character intended to be prohibited by the Legislature, and which we think may be prohibited, in the exercise of the police power of the State without any infringement of the constitutional right of the citizens of the State to keep and bear arms for their common defense.

The only point made for the plaintiff in error by his counsel here, is that the whole act is unconstitutional, and we think, when properly construed, it is not in conflict with the Constitution, and that the judgment of the court below should be affirmed.