## HAILE V. STATE.

1. CARRYING PISTOL: *Act of April 1st, 1881, constitutional.*
   Sections one and two of the Act of April 1st, 1881, prohibiting the carrying of army pistols except uncovered and in the hand, is not unconstitutional.

ERROR to *Pope* Circuit Court.

Hon. W. D. JACOWAY, Circuit Judge.

### STATEMENT.

Haile was convicted in the Circuit Court of Pope county, for carrying a pistol upon the following agreed facts :

"On the twenty–sixth day of September, 1881, in the county of Pope, and State of Arkansas, the defendant did carry uncovered, and buckled around his waist, but not

uncovered and in his hand, a large revolving pistol, known as the Colts army pistol, and such as is used in the army and navy of the United States, when he was not an officer; and said carrying was not under the direction of an officer, and when he was not upon a journey, nor upon his own premises."

This was all the evidence. He appealed.

*C. B. Moore*, Attorney-General, for the plaintiff in error.

Cites Act April 10, 1881, sections 2 and 4. *Acts* 1881, *p.* 192.

EAKIN, J. The defendant below was charged before a justice of the peace, with the offense of carrying a pistol contrary to the Statute, and upon conviction appealed to the Circuit Court.

He was then tried, *de novo*, and convicted upon the agreed state of facts contained in the reporter's statement, and fined fifty dollars. From this judgment he appeals.

The proof shows all the essential elements of the offense, as defined by section 2, of the Act of April 1st, 1881, which prohibits the wearing or carrying any such pistol as is used in the army or navy of the United States, in any manner, except uncovered, and in the hand, save under circumstances which, in this case, did not exist.

The appellant has no brief, but we suppose his exceptions refer to the validity of the act as unconstitutional.

The first two sections are complete in themselves, to constitute and prohibit the offense, and may stand without reference to other sections of the act, concerning which, no opinion is now expressed. The question is, can the Legislature regulate the mode of carrying any arms which the citizens have the constitutional right to keep and bear for

Haile v. State.

their common defense ? We have decided that it may, to some extent, which means that it may, in a reasonable manner, so as, in effect, not to nullify the right, nor materially embarass its exercise.

The constitutional provision sprung from the former tyrannical practice, on the part of governments, of disarming the subjects, so as to render them powerless against oppression. It is not intended to afford citizens the means of prosecuting, more successfully, their private broils in a free government. It would be a perversion of its object, to make it a protection to the citizen, in going, with convenience to himself, and after his own fashion, prepared at all times to inflict death upon his fellow-citizens, upon the occasion of any real or imaginary wrong. The "common defense" of the citizen does not require that. The consequent terror to timid citizens, with the counter violence which would be incited amongst the more fearless, would be worse than the evil intended to be remedied. ·

The Legislature, by the law in question, has sought to steer between such a condition of things, and an infringement of constitutional rights, by conceding the right to keep such arms, and to bear or use them at will, upon one's own premises, and restricting the right to wear them elsewhere in public, unless they be carried uncovered in the hand. It must be confessed that this is a very inconvenient mode of carrying them habitually, but the habitual carrying does not seem essential to "common defense." The inconvenience is a slight matter compared with the danger to the whole community, which would result from the common practice of going about with pistols in a belt, ready to be used on every outbreak of ungovernable passion. It is a police regulation, adjusted as wisely as the Legislature thought possible, with all essential constitutional rights.

The constitutional right is a very valuable one. We

would not disparage it. A condition of things within the experience of men, still very young, illustrates the importance of keeping alive in the mind, and well defined, these old land-marks of Saxon liberty. "*Semper paratus,*" is a good motto. Yet if every citizen may keep arms in readiness upon his place, may render himself skillful in their use by practice, and carry them upon a journey without let or hindrance, it seems to us, the essential objects of this particular clause of the bill of rights will be preserved, although the citizen be required to carry them uncovered, and in the hand, off his own premises, if he should deem it necessary to carry them at all.

The clause, upon this point, of the Tennessee bill of rights, is similar to ours, except that it expressly reserves to the Legislature the power, "by law, to regulate the wearing of arms, with a view to prevent crime." We think this reservation a matter of superabundant caution, inserted to prevent a doubt, and that, unexpressed, it would result from the undefined police powers, inherent in all governments, and as essential to their existence as any of the muniments of the bill of rights. Only the Legislature must take care that in regulating, it does not destroy, nor materially interfere with the objects of the constitutional provision.

A Tennessee law, passed under this constitution in 1871, prohibiting the carrying of an army weapon, except openly, and in the hand, was held constitutional (*State* v. *Welburne,* 7 *Jere Baxter*, 57). We think the first and second sections of our Act of 1881, as free from objection.

There need be no fear, from any thing in these sections, that the citizen may not always have arms, and be skilled in their proper use, whenever the common defense may require him to take them up.

Affirm.