The Honorable James G. Dietz State Representative 5301 Warden Road, Suite H-1 North Little Rock, Arkansas 72116
Dear Representative Dietz:
This is in response to your request for an opinion, on behalf of Mr. William S. Clements, Executive Director of the North Little Rock Housing Authority, regarding the Authority's proposed addition of the following provision to its dwelling lease: "The tenant's possession of or display of a firearm upon the premises is prohibited. A violation of this Section constitutes grounds for automatic termination of this Lease." In correspondence attached to your request, Mr. Clements indicates that this provision is identical to one contained in the dwelling lease of the Portland, Maine Housing Authority and that a trial court in Maine recently held the dwelling lease provision constitutional insofar as it did not violate the guaranties in the Maine Constitution of the right to keep and bear arms, the right to defend life and liberty, or the right to the equal protection of the laws. A copy of this trial court decision was submitted to this office with the request for an opinion. In his correspondence, Mr. Clements also indicates that the North Little Rock Housing Authority's consideration of this provision is due to the "increasing numbers of gang members, drugs and guns" and that it is his belief that the addition of such a provision would be "a useful tool in helping the housing authority and the police department insure the safety of public housing residents and the surrounding neighborhoods." With regard to the lease provision under consideration, Mr. Clements has asked for an opinion on the following question, which I have restated in part:
 Whether the addition of the following provision to the dwelling lease of the North Little Rock Housing Authority would be unconstitutional or in conflict with any Arkansas state laws: "The tenant's possession of or display of a firearm upon the premises is prohibited. A violation of this Section constitutes grounds for automatic termination of this Lease."[1]
With regard to Mr. Clements' question, my research has yielded no state or federal appellate cases which address the constitutionality of a dwelling lease provision such as the one being considered by the North Little Rock Housing Authority.[2]
The Maine case to which Mr. Clements refers in his correspondence, Doe v. Portland Housing Authority (Superior Court, State of Maine, Cumberland, S.S., CV-92-1408, Dec. 29, 1993), is a trial court decision, and while the case may be persuasive with other courts if faced with the same issue, it should be noted that the case has no precedential value outside the jurisdiction of the court which decided the case. The apparent absence of case law, other than trial court decisions, on the constitutionality of leases which prohibit tenants in public housing authorities from possessing firearms makes Mr. Clements' question a difficult one. As such, what I will attempt to do in the context of reasonableness will be defined by the particular problems and concerns confronting the local housing authority. Lease provisions which are arbitrary and capricious, or excessively overbroad or under-inclusive, will be invalidated." After striking the words "weapon of any type" from the lease provision, the court in Richmond held that the provision, as reworded, would be "reasonable" as it is rationally related to the legitimate interest of the Richmond Housing Authority in reducing crime and theft in the developments. The issue of whether such a provision would be constitutional was not, however, raised in the case. Another court, in Chicago Housing Authority v. Rose, 203 Ill. App.3d 208, 560 N.E.2d 1131 (1990), has addressed the issue of whether a housing authority has the burden of proving that a tenant knew or should have known that guns were present in her apartment in a suit brought by the housing authority seeking possession of her apartment for violation of a regulation incorporated into the lease prohibiting anyone from bringing explosives, guns, ammunition, air rifles or any other weapons into the housing authority. Again, however, the constitutionality of such a lease provision was not an issue in the case. Finally, a federal court in Illinois has recently addressed the issue of whether the Chicago Housing Authority can lawfully conduct warrantless searches of housing authority apartments in order to search for guns; such searches were being conducted by the Authority's police department if certain "preconditions" existed (including random gunfire from building to building and/or intimidation at gunpoint or by shooting if weapons were taken into buildings and it could not be determined into which apartments the weapons were taken). See Pratt, et al v. Chicago Housing Authority, 1994 WL 171655 (N.D.Ill. April 7, 1994). In holding that there is a "substantial likelihood" that such searches violate the Fourth Amendment to the United States Constitution, the court in Pratt enjoined the Authority from continuing their "search policy." While it is my understanding that the Chicago Housing Authority prohibits the possession of guns by its tenants, the constitutionality of this policy (or lease provision, as the case may be) was not at issue in the case; rather the case focuses solely on the warrantless searches conducted by the Authority.
In addressing the constitutionality of the dwelling lease provision proposed by the North Little Rock Housing Authority, it is necessary to determine, as an initial matter, whether the Authority would be considered a governmental entity since the constitutional provisions which are potentially applicable in this case operate as limitations on governmental, rather than private, entities. In this regard, it is helpful to look to the state Housing Authorities Act under which the North Little Rock Housing Authority was established. Pursuant to A.C.A.14-169-203(11)(ii), local housing authorities, such as the one established in North Little Rock, are created in order to provide decent, safe, and sanitary urban or rural living accommodations for persons of low income. A housing authority may not transact any business or exercise its powers until the governing body of the city or the county, as the case may be, shall declare by proper resolution that there is a need for an authority to function. A.C.A. 14-169-207(a)(2)(A). Once created, a housing authority constitutes "a public body corporate and politic, exercising exclusively public and essential governmental functions and having all the powers necessary or convenient to carry out and effectuate the purposes and provisions" of the Housing Authorities Act. A.C.A. 14-169-211. The powers of a housing authority are vested in a board of commissioners, which are appointed by the mayor or governing body of the county, as the case may be. A.C.A. 14-169-208. In view of these and other provisions contained in the Housing Authorities Act, it is apparent that a housing authority created thereunder would generally be considered a governmental entity.
As a governmental entity, the North Little Rock Housing Authority would generally be subject to the constitutional constraints placed upon governmental actors. TheSecond Amendment to the United States Constitution is, perhaps, the first constitutional provision which comes to mind with respect to the lease provision in question. The Second Amendment provides: "A well regulated militia, being necessary to the security of a free state, the right of the people to keep and bear arms, shall not be infringed." U.S. Const. amend. II. The case law seems to indicate, however, that the second amendment is a limitation only on the federal government and not on the states. See United States v. Cruikshank, 92 U.S. 542, 553 (1876) (stating "[t]heSecond Amendment declares that [the right to bear arms] shall not be infringed; but this . . . means no more than that it shall not be infringed by Congress. This is one of the amendments that has no other effect than to restrict the powers of the national government . . . ."); Presser v. Illinois , 116 U.S. 252, 264-265
(1886) (same); Miller v. Texas, 153 U.S. 535, 538 (1894) (noting that it is a well-settled principle that thesecond amendment restricts only federal power and declining to address the issue of whether the second amendment is applicable to the states via incorporation through the fourteenth amendment since the issue had not been raised below); Fife v. State, 31 Ark. 455,458 (1876) (Arkansas Supreme Court holding thatsecond amendment acts only as a limitation on the federal government).[3] Despite its receipt of federal funds and classification as a public housing authority under federal law, it is my opinion that the North Little Rock Housing Authority's actions with respect to the lease provision in question would in all likelihood constitute state, rather than federal, action and that thesecond amendment, in accordance with the cases cited above, would thus in all likelihood not be a limitation on such action. This determination is based on the fact that the Authority, while federally subsidized, is a state created, locally administered corporate body. Additionally, it is the North Little Rock Housing Authority, not the federal government, which is proposing the addition of the firearm provision; the result might well be different if the Authority were being required, under federal law or HUD regulations, to amend its dwelling lease to include the provision at issue. In sum with respect to the second amendment, it does not appear that the amendment is applicable in this instance since the case law seems to indicate that it does not operate as a limitation on the states; it should be noted, however, that there are no recent United States Supreme Court cases addressing this issue. See footnote 3.
While the second amendment would not appear to be a limitation on the actions of the North Little Rock Housing Authority with respect to the proposed lease provision, consideration must also be given to the "right to bear arms" guarantee found in Article 2, 5 of the Arkansas Constitution. This constitutional provision provides: "The citizens of this State shall have the right to keep and bear arms for their common defense." Ark. Const. art. 2, 5. The Arkansas Supreme Court has repeatedly held that the state may, as a matter of its police power, place appropriate restrictions on one's right to bear arms. See Jones v. State, 314 Ark. 383, 862 S.W.2d 273
(1993); Haile v. State, 38 Ark. 564 (1882); Wilson v. State,33 Ark. 557 (1878); Fife v. State, 31 Ark. 455 (1876); Carroll v. State, 28 Ark. 99 (1872). The Court also has held that art. 2, 5 applies only to arms that are used for purposes of war and necessary for "the common defense." See Fife v. State, 31 Ark. 455,461 (1876) (Court upholds as not being violative of art. 2, 5 a statute making it unlawful for any person to wear or carry "any pistol of any kind whatever" as a weapon, as applied to an individual who was carrying an 8-inch revolver, reasoning that it was not the type of weapon used in civilized warfare or adapted to promote the common defense or security of a free state; specifically, Court states that pistol intended to be proscribed by statute is such "as is usually carried in the pocket, or of a size to be concealed about the person, and used in private quarrels and brawls, and not such as is in ordinary use, and effective as a weapon of war, and useful and necessary for `the common defense.'") As the term "firearms," as it appears in the lease provision being proposed by the North Little Rock Housing Authority, is very broad and could potentially encompass a class of weapons that would fit into this classification, it is possible that the lease provision would be violative of Art. 2, 5 of the Arkansas Constitution. Because the cases pertaining to this constitutional provision (as cited above) predate the Twentieth Century, it is, however, hard to predict how the Arkansas Supreme Court would construe this provision today and how the Court would rule on such a challenge.
Another constitutional provision which should be considered with respect to the lease provision in question is theFourteenth Amendment to the United States Constitution. The United States Courts of Appeals have generally recognized that public housing authorities are elements of the state forfourteenth amendment purposes. See, e.g., Billington v. Underwood, 613 F.2d 91, 92 n. 1 (5th Cir. 1980); Chavez v. City of Santa Fe Housing Authority, 606 F.2d 282, 283 n. 3 (10th Cir. 1979); Joy v. Daniels, 479 F.2d 1236, 1238-1239 (4th Cir. 1973); Escalera v. New York City Housing Authority, 425 F.2d 853
(2d Cir. 1970), cert. denied, 400 U.S. 853 (1970). Thefourteenth amendment provides in pertinent part: "[N]or shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, 1. With respect to due process, it has been held that a public housing authority cannot evict a tenant without good cause and is subject to the requirements of due process of law. Dial v. Star City Housing Authority, 8 Ark. App. 65,648 S.W.2d 806 (1983). See also Thorpe v. Housing Authority of Durham, 386 U.S. 670, 678 (1967) (stating "[t]he government as landlord is still the government . . . unlike private landlords, it is subject to the requirements of due process of law. . . .") While I see no due process problem with the firearm prohibition portion of the lease provision under consideration, there could be a due process problem with the "automatic termination" section of the provision. In this regard, reference should be made by the North Little Rock Housing Authority to all applicable federal statutes and HUD regulations regarding termination of a housing authority lease in order to assure that the "automatic termination" provision would be consistent with due process requirements regarding public housing.[4]
With respect to the Equal Protection Clause of theFourteenth Amendment, it is arguable that the lease provision in question would be violative of this constitutional section since persons living in the North Little Rock Housing Authority would not be able, as are other citizens, to possess legal firearms in their homes. Such an argument would presumably be based on the theory that the lease provision would only affect persons of low income since it is only those persons which reside in public housing authorities and that the government (i.e., housing authority) would therefore be making a classification based upon wealth. In the Maine case to which Mr. Clements refers in his correspondence, such an argument was raised in a challenge based, in part, on the Equal Protection Clause in the Maine Constitution, which is very similar to thefourteenth amendment clause. In rejecting the equal protection challenge, the Maine trial court stated that the housing authority, by addition of the lease provision prohibiting the possession or display of firearms by the tenants of the housing authority, had made no differentiation at all as to the tenants on account or by reason of their low income status. Instead, the court stated, the cause for the firearm ban was the existence of the conduct threatening the safety and security of the housing authority premises and residents without regard to whether low income status may or may not have had a causal relation to that conduct. See Doe v. Portland Housing Authority (Superior Court, State of Maine, Cumberland, S.S., CV-92-1408, Dec. 29, 1993) at 20. The court also stated that not only had the housing authority made no classification because of the low income status of the plaintiffs in the case, but the authority had made no classification at all relative to their low income status since the classification separating low income persons from others was made not by the Portland Housing Authority, but by the State of Maine and the United States Government in their statutes creating the housing authority. Id. at 20. Finally, the court noted in rejecting the equal protection challenge that the authority had imposed its lease provision banning the possession of firearms on all its tenants and thus had not made a classification among those subject to its control. Id. at 21.
Although the equal protection challenge in Doe v. Portland Housing Authority is based on the Maine Constitution, rather than on the fourteenth amendment, and the case is one from the trial court level, it is my opinion that the equal protection analysis in the case is very persuasive. It is also my opinion that, even if a court were to decide, upon an equal protection challenge to a lease provision such as the one being proposed by the North Little Rock Housing Authority, that the provision constituted a classification based upon income, the court would use a "rational basis" standard of review (rather than the more stringent "strict scrutiny" standard utilized when there is a fundamental right of "suspect class" involved) in determining whether the lease provision was unconstitutional. This determination is based on the fact that poverty, standing alone, does not describe a suspect classification (See, e.g., Harris v. McRae, 448 U.S. 297 (1980); San Antonio Independent School District v. Rodriguez, 411 U.S. 1 (1973)) and that, presumably, no fundamental rights are involved. Under the "rational basis" standard of review, a court asks whether the policy in question is rationally related to achieving a legitimate governmental objective. See generally Medlock v. Leathers, 311 Ark. 175, 842 S.W.2d 428 (1992). Thus, even if the equal protection clause were implicated by a lease provision such as the one being proposed by the North Little Rock Housing Authority because the court found a classification based on income, it is my opinion that the lease provision in question could withstand an equal protection challenge if a court found a "rational basis" for it.
Finally, with regard to Mr. Clements' question as it relates to whether the proposed lease provision would violate any state laws, it is my opinion that there are, generally, no state statutes which would prohibit such a provision. Although Act 1100 of 1993 (codified at A.C.A. 14-16-504 and 14-54-1411) prohibits "local unit[s] of government" from enacting any ordinance or regulation pertaining to, or regulate in any other manner, the "ownership, transfer, transportation, carrying, or possession of firearms, ammunition for firearms, or components of firearms, except as otherwise provided in state or federal law," it is my opinion that the act would not be a limitation on local housing authorities since they are not, in my opinion, "local units of government" within the meaning of Act 1100. See A.C.A. 14-16-504(a) and 14-54-1411(a) (defining "local unit of government," as used in the act, as "a city, town, or county").[5] Additionally, I have found no statutes within the state Housing Authorities Act which would appear to prohibit the North Little Rock Housing Authority from utilizing a lease provision such as the one proposed. However, it should be noted that, as with the potential constitutional implications of the proposed lease provision, a review of all state statutes is not possible in the limited scope of an attorney general's opinion.
In conclusion, the case law seems to indicate that theSecond Amendment to the United States Constitution does not operate as a limitation on the states; in accordance with those cases, it would not appear that the second amendment would be a limitation on the North Little Housing Authority in adding a provision to their dwelling lease prohibiting tenants from possessing firearms on the premises of the housing authority. The provision under consideration could, however, be subject to challenge under Article 2, 5 of the Arkansas Constitution, and as there are no recent cases construing this provision, it is very difficult to predict how a court would rule on such a challenge. There may also be due process concerns with the "automatic termination" section of the proposed lease provision, and the Authority should consider all applicable federal laws and HUD regulations concerning lease requirements for notice of termination. With respect to the equal protection clause, the proposed lease provision could, arguably, be challenged on that basis; the discussion provided herein will hopefully offer some guidance in this regard. As for state statutes, there appear to be none which would prohibit the type of provision being considered by the North Little Rock Housing Authority.
Finally, it is important to emphasize that, as there is not a plethora of case law on the validity of provisions such as that being proposed by the North Little Rock Housing Authority, it is hard to predict how a court would rule if faced with a challenge to one of these provisions. Accordingly, I cannot offer a definitive answer to the question posed by Mr. Clements, although it is my hope that the discussion provided herein will offer some assistance. Ultimately, a conclusive determination with respect to the type of lease provision being proposed will require resort to the judiciary.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Nancy A. Hall.
Sincerely, WINSTON BRYANT Attorney General
[1] It is my understanding that the North Little Rock Housing Authority was established pursuant to the state "Housing Authorities Act," A.C.A. 14-169-201 et seq. (1987 and Cum. Supp. 1993). It is also my understanding that the Authority is federally subsidized under the "United States Housing Act,"42 U.S.C. § 1437 et seq., and, as such, is considered a "Public Housing Authority" ("PHA") under federal law. As a PHA, the North Little Rock Housing Authority must operate in accordance with federal statutes and regulations of the United States Department of Housing and Urban Development ("HUD") regarding public housing. The dwelling lease provision being proposed by the North Little Rock Authority is not, as I understand it, a requirement under either federal statutes or HUD regulations.
[2] There is one court, however, which has addressed the issue of whether a provision in a housing authority dwelling lease which requires that tenants "refrain from the use and/or possession of any weapon of any type on Management's property, including, but not limited to, guns, firearms (operable or inoperable), nunchucks, or similar instruments, blackjacks and explosive devices" is violative of 42 U.S.C. § 1437d(l)(1), which provides that public housing agencies shall use leases which "do not contain unreasonable terms." See Richmond Tenants Org., Inc. v. Richmond Redevelopment and Housing Authority, 751 F. Supp. 1204 (E.D.Va. 1990). The court in Richmond held that the words "weapon of any type," as appeared in the provision, were overly broad and therefore an "unreasonable" term under 42 U.S.C. § 1437d(l)(1). As for what constitutes an "unreasonable" lease term under § 1437d(l)(1), the court stated that lease terms must be "rationally related to a legitimate housing purpose." In applying this test, the court stated: "[t]he crucible of this opinion is provide a discussion of some of the constitutional provisions which, in my opinion, may or may not be implicated by the lease provision being considered by the North Little Rock Housing Authority. This discussion will, hopefully, provide some guidance to the Authority in reaching a final decision as to the addition of this provision to their dwelling lease. It should be emphasized, however, that in the limited context of this opinion, a thorough review of all of the possible constitutional implications of the proposed lease provision is not possible.
[3] It should be noted that all of these cases predate the first United States Supreme Court decision incorporating a provision of the Bill of Rights through the fourteenth amendment and that the Supreme Court has never squarely addressed the issue of whether the fourteenth amendment incorporates thesecond amendment, thereby extending its limitations to the states. See generally White, A New Trend in Gun Control: Criminal Liability for the Negligent Storage of Firearms, 30 Hous. L. Rev. 1389 (Fall 1993). However, the Supreme Court continues to cite Presser (see Malloy v. Hogan, 378 U.S. 1, 4 n. 2 (1964)), and lower courts continue to follow Cruikshank, Presser, and Miller despite arguments that the decisions are no longer good law. See, e.g., Quilici v. Village of Morton Grove, 695 F.2d 261
(7th Cir. 1982); Fresno Rifle and Pistol Club, Inc. v. Van de Kamp, 965 F.2d 723, 731 (9th Cir. 1992) (stating "[u]ntil such time as Cruikshank and Presser are overturned, theSecond Amendment limits only federal action. . . .") See also United States v. Hale, 978 F.2d 1016, 1020 (8th Cir. 1992) (citing United States v. Miller, 307 U.S. 174, 178 (1939), and stating "[t]he purpose of the Second Amendment is to restrain the federal government from regulating the possession of arms where such regulation would interfere with the preservation or efficiency of the militia.") Additionally, it is important to note that courts have generally rejected the argument that thesecond amendment has been implicitly incorporated through thefourteenth amendment under a "total incorporation" theory. See, e.g., Quilici, Id. at 270 (stating "[t]he Supreme Court has specifically rejected the proposition that the entire Bill of Rights applies to the states through thefourteenth amendment. Adamson v. California, 332 U.S. 46, . . . (1947), overruled on other grounds, Malloy v. Hogan, 378 U.S. 1, . . . (1964); Palko v. Connecticut, 302 U.S. 319, . . . (1937); Twining v. New Jersey, 211 U.S. 78, . . . (1908)."); Fresno Rifle and Pistol Club, Inc., Id. at 730 (stating that the theory of total incorporation has been continually rejected by the Court).
[4] See, e.g., 42 U.S.C. § 1437d(l) (requiring public housing agencies to use leases which require the agencies to give adequate written notice of termination of the lease and providing that "adequate notice" shall not be less than (1) a "reasonable time, but not to exceed 30 days," when health or safety of other tenants or housing employees is threatened, and (2) not less than 30 days in any other case; also providing that housing authority may not terminate tenancy except for serious or repeated violation of the terms or conditions of the lease or for other "good cause.") See also 24 C.F.R. 966.4(l) (regarding lease requirements with respect to termination of tenancy and notice of termination). Particular emphasis should be paid to these and other provisions regarding termination of a housing authority lease if the North Little Rock Housing Authority decides to include in their dwelling lease the lease terms at issue.
[5] It is also my opinion that a housing authority would not fall within the scope of the term "city," as used in the definition of "local unit of government," since the Arkansas Supreme Court has stated that the housing authorities statutes "demonstrate that the housing authorities are autonomous entities that have the power to act in every field related to their work independently of the cities." Arkansas Louisiana Gas Co. v. City of Little Rock, 256 Ark. 112, 114, 506 S.W.2d 555
(1974).